STATE OF MISSOURI, Respondent, v. ALFRED LEE BRADLEY, Appellant, No. 41961—234 S. W. (2d) 556.

Division One, November 13, 1950.

Motion for Rehearing or to Transfer to Banc Overruled, December 11, 1950.

*William M. Stringer* for appellant.

270

*J. E. Taylor*, Attorney General, and *Frank W. Hayes*, Assistant Attorney General, for respondent.

[558] VAN OSDOL, C.—Defendant was convicted of murder in the first degree. His punishment was assessed at life imprisonment in the state penitentiary. He has appealed from the ensuing judgment.

There was substantial evidence tending to show that defendant, who formerly lived at Moberly, had entered into a conspiracy with four others (Herman Alva Robinson, William F. Wiley, Jack Warren Babcock and Arthur Schofield) to rob; and that the conspirators, including defendant, "shortly after midnight" in the morning of Sunday, December 7, 1947, pursuant to the conspiracy, participated in the robbery of persons present at a filling station operated by one Roy Eubank at a point on the east side of United States Highway No. 63 about one mile south of Moberly in Randolph County, in the perpetration of which robbery Roy Eubank was fatally shot by the conspirator Arthur Schofield.

Herein upon appeal defendant-appellant contends the information was fatally defective because it did not aver "conspiracy." And defendant-appellant further contends the trial court erred (1) in refusing to require the State to elect to reduce its charge to murder in the second degree; (2) in overruling defendant's motion to require the State to invoke *habeas corpus ad testificandum* for the State's witness Robinson; (3) in the exclusion of evidence; (4) in permitting a witness to refresh his recollection by referring to a memorandum; and (5) in the giving and refusal of instructions.

The conspirators were charged severally, and the information charging defendant with the stated crime of murder in the first degree was in common form. See State v. Conway, 351 Mo. 126, 171 S. W. 2d 677. The information did not aver, and it was unnecessary that it aver the homicide was committed by another, who, with defendant and others had entered into a conspiracy to rob. Defendant was not prosecuted for participating in a conspiracy. He was not prosecuted for robbery. He was prosecuted for murder. The evidence of the conspiracy was but an incident to the crime charged, and the proof that the homicide was committed in the perpetration of robbery was tantamount to proof of the constituent elements of the crime of murder in the first degree. Section 4376 R. S. 1939, Mo. R. S. A. § 4376; State v. Parr, 296 Mo. 406, 246 S. W. 903; State v. Nasello, 325 Mo. 442, 30 S. W. 2d 132; State v. Messino, 325 Mo. 743, 30 S. W. 2d 750; State v. Conway, supra; State v. Foster, 136 Mo. 653, 38 S. W. 721; People v. Cabaltero, 31 Cal. App. 2d 52, 87 Pac. 2d 364.

(1) As we have said, the several conspirators were severally charged with the stated crime. Changes of venue were granted Wiley and Babcock to the Circuit Court of Boone County wherein they entered pleas of guilty to the charge of murder in the second degree, and were sentenced to life imprisonment. Defendant-appellant's case, the instant case, was transferred upon change of venue to Audrain County. Defendant-appellant contends the Circuit Court of Boone County, in disposing of the Wiley and Babcock cases, "passed upon the facts" and by solemn judgment determined that the crime, if any, committed by the conspirators was murder in the second

degree. Defendant urges the issue of the *degree* of the crime is *res judicata*.

In civil actions the application of the doctrine of *res judicata* is generally limited to a former judgment in an action between the same parties, or between those in privity with them. 50 C. J. S., Judgments, § 601, p. 25. Defendant-appellant [**559**] *was not a party* defendant in the cases disposed of by judgment and sentence entered and pronounced upon the pleas of guilty of Wiley and Babcock in the Circuit Court of Boone County. The disposition of the Wiley and Babcock prosecutions, to which he was not a party, was of no concern to defendant herein. The judgments in the Wiley and Babcock cases could not have been pleaded in bar by defendant, nor was evidence of the disposition of those cases admissible in the instant case. State v. Brown, 360 Mo. 104, 227 S. W. 2d 646; State v. Couch, 341 Mo. 1239, 111 S. W. 2d 147; State v. Recke, 311 Mo. 581, 278 S. W. 995. The doctrine of *res judicata*, in its application to criminal prosecutions, is subject to the same limitations as apply to civil actions. State v. Humphrey, 357 Mo. 824, 210 S. W. 2d 1002; Annotation, 147 A. L. R. 911, at page 992; 50 C. J. S., Judgments, § 754, p. 266, at page 268.

(2) The State did not make application for *habeas corpus ad testificandum* for its witness Herman Alva Robinson, who, at the commencement of the trial of the instant case, was confined in the Randolph County jail at Huntsville. He was produced and testified for the State in the prosecution of the State's case against defendant without any compliance by the State with Sections 1909 and 1911 R. S. 1939, Mo. R. S. A. §§ 1909 and 1911. Defendant moved to suppress the testimony of Robinson on the ground that defendant had the right to have the State make application, as provided in Section 1909, supra, so that defendant might "know the testimony of the said Robinson." It was further stated in the motion that Robinson had refused to talk to defendant or to defendant's attorney because of fear of self-incrimination. The trial court did not err in overruling. defendant's motion.

The name of the witness, Herman Alva Robinson, was endorsed as a witness on the information on November 22, 1948, nearly five months before the trial beginning April 18, 1949. (There was no showing, nor does defendant contend that the sheriff of Randolph County, as keeper of the Randolph County jail in which Robinson was confined, refused defendant's counsel the opportunity to interview Robinson.) The name of Robinson having been endorsed on the information, defendant was then apprised that the State might rely upon his testimony. Defendant had more than ample time thereafter to interview the witness. Defendant-appellant misconceives the purpose of the application and statement provided in Sections 1909 and 1911, supra, especially the purpose of the requirement of Section 1911

that the application shall state "the testimony of such prisoner is material and necessary to the applicant" on the trial or hearing of a suit or proceeding, civil or criminal. The required statement of the materiality of the testimony of a prisoner is not prescribed in order that an opposing party may be apprised of the testimony of a witness. The required statement is to enable the court, or a judge thereof, in the exercise of sound discretion, to determine the necessity of the attendance of the prisoner as a witness. State ex rel. Rudolph v. Ryan, 327 Mo. 728, 38 S. W. 2d 717. See also In re Thaw, 166 F. 71.

■ (3) The trial court excluded defendant's proffer of the record of the Circuit Court of Randolph County disclosing the filing, July 20, 1948, of the transcript of the preliminary hearing in the case of State v. Herman Alva Robinson. Defendant-appellant further offered to prove by the record that no information had been theretofore filed against Robinson. Defendant-appellant's announced purpose, in offering the record "only," was to prove a circumstance "tending to show that the State is offering leniency to the witness." If leniency had been offered or promised the witness Robinson, such fact would have been material as affecting his credibility as a witness; and defendant, of course, was entitled to go into the question. Counsel for defendant had subjected Robinson to a searching cross-examination of great length especially relating to the privileges granted him by the officers, and relating to promises or offers of leniency. However, the fact, without more, that no information had been yet filed [560] against Robinson, was of very doubtful probative force in tending to show the State had made such an offer or promise, and the admission of the record into evidence might have precipitated a further inquiry out of all proportion to its evidentiary value. We believe the trial court did not err in excluding the record.

■ (4) The sheriff of Randolph County, Amos Magruder, and other officers received custody of defendant from officers of Kansas City where defendant had been apprehended. The transfer of custody was made at a point between Lexington and Waverly in the afternoon of Saturday, April 3, 1948. The sheriff testified that, while driving from that point to Moberly, the officers "talked the thing over with Alfred (defendant) all the way into the office." In testifying of the statements made by defendant during the journey, the sheriff was permitted, over defendant's objection, to refer to notes made from memory by the witness on Monday, April 5th, the second day after the event. Defendant's objection was on the stated ground the memoranda were not made at the time "the conversation was had."

If a reference to a memorandum "sparks" a *present* recollection so that a witness can testify from independent resensing or revisualization of the event, the time when the memorandum was made is of little moment, because the probative force of the testimony of the witness is his independent present recollection of the event. On the other

hand, if, having referred to a memorandum, the present recollection of the witness is not stimulated, the witness must necessarily rely upon his *past* recollection as recorded in the memorandum; and in such a situation the correctness and trustworthiness of the memorandum are of importance, because the faith reposed in the verity of the memorandum affords the probative force of the testimony of the witness. Collier v. Langan & Taylor Storage & Moving Co., 147 Mo. App. 700, 127 S. W. 435; Ward v. Morr Transfer & Storage Co., 119 Mo. App. 83, 95 S. W. 964; Vol. 5, Jones, Commentaries on Evidence, 2d Ed., § 2378, pp. 4668-4671; Annotation, 125 A. L. R. 19, at pages 62 and 121; Annotation, 65 A. L. R. 1478, at page 1488.

Defendant-appellant by his objection, in effect, challenged the trustworthiness of the sheriff's notes on the ground the notes were not made at the time of the sheriff's conversation with defendant. If we assume the sheriff, having referred to his notes, was yet unable to independently recall defendant's statements, the sheriff's use of his notes, the record of his past recollection, was subject to proof that the notes were made at the time, or so near the time of the event that, *in the circumstances,* it could be safely assumed his recollection of the event was sufficiently fresh to enable him to correctly record it. See Vol. III, Wigmore on Evidence, 3d Ed., § 745, pp. 78-80; Vol. 5, Jones, Commentaries on Evidence, 2d Ed., § 2390, pp. 4700-4702; and examine State v. Carpenter, 216 Mo. 442, 115 S. W. 1008. The question of permitting the "refreshment of memory" of a witness depends upon the circumstances of the particular case, and the answer is within the discretion of the trial court, reviewable only upon abuse. State v. Merrell, Mo. Sup., 263 S. W. 118; Voyles v. Columbia Terminals Co., Mo. App., 223 S. W. 2d 870; Collier v. Langan & Taylor Storage & Moving Co., supra. We see no abuse of discretion in our case.

The sheriff was an officer having the custody of defendant at the time the statements were made. The defendant was suspected of having participated in a robbery in the sheriff's own county, in the perpetration of which robbery homicide had been committed. It would seem, in such circumstances, the sheriff must have been attentive to the conversation, and it is not unreasonable to assume that when the notes were made, two days after the conversation, the sheriff accurately recalled defendant's language.

(5) The trial court advised the jury in Instruction C-1,

"The defendant is charged with a criminal offense against the laws of the State of Missouri. He pleads not guilty, thereby raising an issue of fact between the State of Missouri and himself, which you, the [561] jury, are to determine from all the facts and circumstances in the case.

"It is the duty of the Court to instruct you on all questions of law arising in this case, and it is your duty to receive such instructions as the law of the case, and to find the defendant guilty or

not guilty, according to the law as declared by the Court and the evidence as you have received it under the direction of the Court.''

Defendant-appellant complains there was no issue and there were no facts hypothesized in the instruction. And he contends that the instruction emphasizes the fact the State was against defendant; and that the jury was free to find the defendant guilty or not guilty from all facts and circumstances, even those not in evidence, including the statements of State's counsel and the ''court's attitude towards the defendant.''

The instruction did not even purport to hypothesize facts and to submit the issue of defendant's guilt to the jury. The main instruction, S-1, performed that office. The instruction, C-1, was merely introductory and cautionary in character. It is indeed precisely true that defendant's plea of ''not guilty'' to the State's charge of a criminal offense raised an issue of fact between the State and defendant, which issue the jury was to determine from the facts and circumstances. In the second paragraph of the instruction the jury was cautioned that the court's instructions were to be received as the law of the case and that the jury had the duty to find the defendant guilty or not guilty according to the law so declared ''and the evidence as you have received it under the direction of the Court.'' The second paragraph of the instruction is almost identical with the Instruction 1, said to be in stereotype form, in State v. Williams, 136 Mo. 293, 38 S. W. 75.

Instruction C-2 was not argumentative. It was cautionary in admonishing the jury that the instructions were not to be considered as an expression of the court's view of the facts, and that it was the jury's province to determine the guilt or innocence of defendant ''from the evidence in the case.'' The Instruction C-2 was complementary to (and not in conflict with, as defendant-appellant contends) Instruction C-1, supra, and with Instruction C-3 (on presumption of innocence and reasonable doubt) and with Instruction S-1 (the main or principal instruction). The several instructions read together advised that defendant's guilt or innocence was to be determined by the jury upon a consideration of all the facts and circumstances proven in the case.

Defendant-appellant contends Instruction C-4, upon the credibility of the witnesses, was erroneous. The instruction, except the last sentence or concluding paragraph, was substantially like the Instruction 9 given in the case of State v. Hottman, 196 Mo. 110, 94 S. W. 237. However, the last sentence or concluding paragraph of Instruction C-4 advised the jury concerning the evidentiary rule, ''falsus in uno, falsus in omnibus,'' as follows,

''If upon a consideration of all the evidence, you conclude that any witness has willfully sworn falsely to any material matter or fact involved in the trial, you should consider that fact, if you find

it to be a fact, in determining the credibility of the remainder of such witness's testimony or any other part thereof."

The quoted paragraph does not go beyond this court's view as expressed in State .v. Willard, 346 Mo. 773 at page 784, 142 S. W. 2d 1046 at page 1053. See Annotation, 90 A. L. R. 74, at page 81. The proper Instruction C-4, covering credibility of witnesses and "falsus in uno, falsus in omnibus," having been given, it was not error to refuse defendant's proffered instruction covering the subjects. State v. Koch, 322 Mo. 106, 16 S. W. 2d 205. The same rule is applicable to instructions on circumstantial evidence, alibi, and the voluntariness of defendant's statements. State v. Kebler, 228 Mo. 367, 128 S. W. 721; State v. Shelton, 223 Mo. 118, 122 S. W. 732; State v. Gibilterra, 342 Mo. 577, 116 S. W. 2d 88.

▮ The trial court, as we have indicated, gave an instruction on circumstantial evidence, Instruction C-5; and, in the main instruction, S-1, the trial court advised the jury of the effect of an agreement or understanding between two or more persons to aid and assist each other in the commission [562] of crime. The subjects having been appropriately covered by Instructions C-5 and S-1, it was not error to refuse defendant's proffered Instruction D-11 treating with the same.

▮ Given Instruction C-6 defined murder in the first degree as "the killing of a human being willfully, deliberately, and premeditatedly and with malice aforethought, or the killing of any human being in the perpetration or *attempt* to perpetrate a robbery." Instruction S-1 (principal instruction) hypothesized that defendant and others had formed a mutual and joint intent and purpose to rob, in the pursuance of which intent and purpose the defendant and others "did rob or make an *attempt* to rob . . . ." Likewise Instruction C-8 (alibi) instructed that defendant was to be acquitted if "you have a reasonable doubt of the presence of the defendant at the time and place of the robbery or *attempted* robbery . . . ." (Our italics.) Defendant-appellant contends the three instructions were erroneous in that the use of the word "attempt" was not supported by evidence. He says that the evidence shows the crime of robbery was "fully committed," and there was no evidence of an attempt which failed.

Although it is said that, where a defendant charged with a crime the consummation of which is supported by substantial evidence, he should not be convicted of an *attempt* to commit the crime charged (Section 4836 R. S. 1939, Mo. R. S. A. § 4836; State v. King, 342 Mo. 975, 119 S. W. 2d 277), we reiterate that, in the instant case, defendant was not charged with the crime of robbery. He was charged with murder. Now it was immaterial (on the issue of defendant's guilt or innocence of murder) whether the shown homicide was committed in "an attempt" to rob, or in "robbery." The trial court apparently followed the statute by the use of the language "perpetration or

attempt to perpetrate . . . robbery.'' Section 4376, supra. In this, we see no error prejudicial to defendant.

Instruction C-8, supra, did not put the burden of proof of alibi on defendant. The instruction was similar to the Instruction 9 (without the italicized clause of the Instruction 9) in the case of State v. Simpson, Mo. Sup., 237 S. W. 748. The court had advised the jury that it devolved upon the State to prove defendant's guilt by evidence ''beyond a reasonable doubt'' in Instruction C-3. Instruction C-8 is not in conflict but is in harmony with this court's opinion in State v. Hubbard, 351 Mo. 143, 171 S. W. 2d 701, cited by defendant-appellant.

As we have stated supra, there was substantial evidence tending to show that defendant's co-conspirator Schofield fatally shot Roy Eubank. There was no evidence tending to show defendant, personally, fired the fatal shot. Defendant-appellant does not complain of any error in the main or principal instruction, S-1, but contends the trial court erroneously refused to give his requested Instructions D-8 and D-9 which required the defendant's acquittal if the jury did not find beyond a reasonable doubt that *defendant* ''did kill him the said Roy Eubank by shooting . . . .'' It is contended by defendant-appellant the instructions were proper as converse instructions. The main instruction, S-1, submitted the essential facts to be proven by the State to authorize a conviction—participation by defendant in a conspiracy to rob, in the perpetration of which robbery a homicide was committed—and concluded, ''and unless you so find, you will acquit defendant.'' Nevertheless, had defendant formulated and requested a *correct* instruction, or instructions, submitting the converse of the facts and issues upon which the conviction was authorized, the trial court (since the converse was not fully and fairly covered by other instructions) would have had the duty to give it. State v. Boyd, 354 Mo. 1172, 193 S. W. 2d 596; State v. Talbert, 351 Mo. 791, 174 S. W. 2d 144; State v. Quinn, 344 Mo. 1072, 130 S. W. 2d 511; State v. Fraley, 342 Mo. 442, 116 S. W. 2d 17; State v. Buckner, Mo. Sup., 80 S. W. 2d 167; State v. Tucker, 333 Mo. 171, 62 S. W. 2d 453; State v. Ledbetter, 332 Mo. 225, 58 S. W. 2d 453. However, as we have seen, the instructions, D-8 and D-9 formulated and requested by defendant, did not correctly submit the converse of main Instruction S-1; the instructions, D-8 and D-9, did not hypothesize the converse of defendant's participation in the [563] conspiracy, nor did they hypothesize the converse of the homicide in the perpetration of robbery pursuant to the conspiracy. The instructions, D-8 and D-9, if given, would have amounted to instructing the jury to acquit defendant. The requested instructions having been incorrectly formulated, the trial court was not in error in refusing them. State v. Tucker, supra.

Defendant-appellant further contends the trial court erred in failing to instruct on all of the law of the case. He asserts the

trial court should have instructed on manslaughter and murder in the second degree; and should have submitted a theory that Roy Eubank was shot by some person other than the conspirators. The evidence did not justify the submission of any theory that Eubank was shot by anyone other than one of the conspirators. And, in the instant case, manslaughter and murder in the second degree were not submissible. The State's case was abundantly supported by proof that Roy Eubank was fatally wounded in the perpetration of a robbery. There was no evidence the homicide was committed in other circumstances. Even if there were evidence tending to show, as defendant-appellant asserts, that Roy Eubank was a party to the conspiracy to rob, the homicide having been committed in the perpetration of the robbery, the only submissible crime would have been nevertheless murder in the first degree. *A man was killed in the perpetration of robbery.* No exception is to be made where one co-conspirator intentionally or accidentally kills another. People v. Cabaltero, supra. As we have said, proof of homicide in perpetration of robbery is tantamount to proof of the elements of murder in the first degree—wilfulness, deliberation, premeditation. The legislature, because of the enormity of the offense, where a homicide is shown to have been committed in the perpetration of a felony, has absolutely fixed the degree of the offense as murder in the first degree. The jury was correctly authorized to find only one of two verdicts, namely, a conviction of murder in the first degree, or an acquittal. Section 4376, supra; State v. Conway, supra; State v. Jackson, 340 Mo. 748, 102 S. W. 2d 612; State v. Kauffman, 335 Mo. 611, 73 S. W. 2d 217; State v. Moore, 326 Mo. 1199, 33 S. W. 2d 905; State v. Yeager, Mo. Sup., 12 S. W. 2d 30; State v. Hart, 292 Mo. 74, 237 S. W. 473; State v. Foster, supra; People v. Cabaltero, supra.

The judgment should be affirmed.

It is so ordered. *Lozier* and *Aschemeyer, CC.,* concur.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court. All the judges concur except *Hollingsworth, J.,* not sitting.