John W. SMITH, Plaintiff-Respondent,

v.

Howard J. BERGMANN, Defendant-Appellant.

No. 23903.

Kansas City Court of Appeals.

Missouri.

April 6, 1964.

Paul H. Niewald, Gordon, Adams, Niewald & Risjord, Kansas City, for appellant.

Barkley M. Brock, Julius F. Wall, Poague, Brock & Wall, Clinton, for respondent.

HUNTER, Judge.

Defendant, Howard J. Bergmann, appeals from a judgment of the Circuit Court of Henry County, for plaintiff, John W. Smith, in the sum of $7,110.00. The suit was a result of an automobile collision on December 28, 1959, at the intersection of 10th and Washington Streets in Kansas City, Missouri.

Plaintiff was driving a Buick automobile north on Washington Street about 8:30 a. m. on a wet pavement resulting from rain and "spitting snow". Defendant was driving his station wagon automobile at about 15 to 20 miles per hour and was following behind plaintiff about 7 to 10 yards. As plaintiff's car was almost to the intersection of 10th and Washington Streets, the traffic control light changed to yellow and he applied his brakes and came to a stop near the south crosswalk. His car was then struck in the rear by defendant's oncoming car, allegedly causing a whiplash injury to his neck.

As a result of the trial, on Count I the jury awarded plaintiff $7,000.00 damages for personal injuries and on Count II, for damage to his Buick automobile, the jury awarded plaintiff $110.00. In appealing, defendant has limited his contentions of error to two items. The first is that the trial court erred in permitting plaintiff to read from a document not entered into evidence and not qualified for use in refreshing recollection.

Plaintiff was asked by his counsel what period of time he was off his job completely in March, 1960 and thereafter. Plaintiff wished to refer to a paper he stated he had prepared the night before, to refresh his recollection. Defendant objected that it was "prepared just last night, and its not a document to refresh his recollection". The objection was overruled and plaintiff answered, "Well, I was off from March the 3rd until March the 7th, and then again I think I was off from March the 10th to June the 19th, I believe it was. Q. Do you know how many days you were off alto-gether there in those two or three months? A. I believe 41 days." On cross-examination defendant's counsel elicited from plaintiff, who apparently testified from memory alone, that he missed some six weeks' work from March until June—"I was off in March, and then I was off again from May to June. * * * Q. And during most of March, except for five or six or seven days, you received full pay? A. Yes, something like that."

Mr. Les L. Carter, plaintiff's employer during the time in question, testified without objection that plaintiff was off the pay-roll, according to the payroll reports, from March the 3rd to March the 7th, March the 10th to March the 16th and from May the 4th through June the 19th. And upon cross-examination defendant's counsel asked, "Q. According to your payroll records there, from the document that you have refreshed your memory with, Mr. Carter, the only days that he missed in 1960 were March 3rd to March the 7th, 10th to 16th, and May 4th to June 19th? A. According to the payroll, that's right."

It is difficult to tell from the record whether plaintiff actually glanced at the paper he had prepared the night before prior to answering the mentioned question. It is clear, however, that his answer purported to be from his memory and not merely a reading by him from the document.

■■■ While there is some conflict in the authorities the general rule as to when a writing or memorandum can be used by a witness to refresh his memory *by reviving a present recollection from which he testifies* is set out in summary form in 58 Am. Jur., Witnesses, Sections 584–585, pages 326 ff. as: "The use of a memorandum to refresh memory is always permitted where the witness can, after consulting it, testify to the facts to which it relates from an independent recollection." See, Annotations, 125 A.L.R. 62, 82 A.L.R.2d 496, 511; 98 C.J.S. Witnesses § 358b, page 85. In State v. Bradley, Mo., 234 S.W.2d 556, 561, our

Supreme Court stated the rule thusly, "If a reference to a memorandum 'sparks' a present recollection so that a witness can testify from independent resensing or re-visualization of the event, the time when the memorandum was made is of little moment, because the probative force of the testimony of the witness is his independent present recollection of the event. On the other hand, if, having referred to a memorandum, the present recollection of the witness is not stimulated, the witness must necessarily rely upon his past recollection as recorded in the memorandum; and in such a situation the correctness and trustworthiness of the memorandum are of importance, because the faith reposed in the verity of the memorandum affords the probative force of the testimony of the witness." And see, Thos. Cusack Co. v. Lubrite Refining Co., Mo.App., 261 S.W. 727. In view of the above stated rule, it is clear that the trial court did not err in permitting plaintiff to refer to the mentioned document.

■ There is an additional reason why the above described incident was not a reversibly erroneous matter. The same facts as were elicited from plaintiff were clearly established by proper evidence given without objection by Mr. Les L. Carter, plaintiff's employer. As stated in 5A C.J.S. Appeal and Error § 1735, page 1028, "If the same facts are afterward substantially established by proper evidence of the same or similar effect, the admission of improper evidence is harmless; and this is especially so where the later evidence is admissed without contradiction or objection." And see 5 Am.Jur.2d, Appeal and Error, Sections 800 and 806, pages 241, 248.

■ Defendant's other contention of error is that the verdict for personal injuries is excessive. Where, as here, the trial court has overruled defendant's motion for a new trial, in examining the contention of excessiveness of the award our duty is to state and consider the evidence of the nature and extent of plaintiff's injury in the light most favorable to plaintiff.

■ Plaintiff was an electrical lineman by trade, having done this type of work for more than thirty-three years. His work customarily involved climbing up and working on poles such as are used to support and hold up electrical wiring. On the day of the accident he was working for Carter Construction Company and was driving to his work in Leavenworth, Kansas when his car was struck from the rear, as above related.

Plaintiff's Buick was knocked some ten or twelve feet out into the intersection by the impact. Plaintiff's "neck flew back and my neck did snap, I could feel it." He told defendant at the scene that his neck hurt. When he attempted to drive from the scene to Leavenworth, Kansas, where his job was he became dizzy and felt "funny", and had to pull off the highway and sit for awhile. On his arrival at the job site he just told his men what to do and returned immediately to Kansas City to see a doctor.

About 3:30 p. m. of the day of the accident plaintiff saw Dr. Powell, an osteopathic physician, who examined him, x-rayed his neck and treated him. He did not go back to work for three days. His neck was stiff and sore and continued to "bother" him. He had dizzy spells. Although he couldn't work full time and missed some whole days in January and February, 1960, the two months following the accident, his employer paid him in full. He was unable to climb poles as that made him dizzy. When he would look up that also made him dizzy. Finally, he just remained off work completely from March 3–7, and from March 10–June 19, 1960, for an approximate total of 41 days, unable to do any kind of work. Since his return to work he has tried to climb poles but is physically unable to do so. He continues to suffer dizziness and loss of balance. He can't turn his head "clear around sideways any more without it hurting me, and I can't turn it to the left hardly at all." His neck has remained stiff. This causes trouble in trying to sleep; he has to sleep with his head between two pillows and remain flat on his back. He con-

tinues to have headaches. Even looking up to watch other men at work on the poles makes him dizzy and causes his neck to "bother" him.

Dr. Powell, who practices in Clinton, Missouri, testified he had been plaintiff's family doctor for about fifteen years. When plaintiff came to him the day of the accident plaintiff was experiencing extreme pain on any motion of the neck or head and his neck was very tender on examination. Relative to his neck injury Dr. Powell treated plaintiff a total of 56 times from December 28, 1959 to March 9, 1960. The treatments consisted mostly of physiotherapy to relax the neck.

According to Dr. Powell, plaintiff continues to have inability to look up and to turn his head from side to side and continues to suffer dizziness persistent with the motion of his neck and especially when he is looking up. Since plaintiff was in good health, did not have headaches or dizziness before this accident, and has continued to have them since, Dr. Powell attributes them to the accident. He testified that plaintiff will not be able to do work that requires him to climb poles and look up or tilt his head backwards, as long as it continues to create dizziness and cause headaches and pain. Dr. Powell was unable to say when plaintiff will recover from his conditions resulting from the accident. He hasn't responded much in the past year and the neck condition may be permanent.

Plaintiff's normal work week at the time of the accident consisted of an eight hour day for five days for a total of forty hours. His rate of pay was $4.45 per hour. He testified he lost forty-one working days as a result of the accident, for a total wage loss of approximately $1,460.00. His medical bills from Dr. Powell for treatment of his injury totalled $170.50.

While we think the verdict of $7,000 for personal injuries is liberal, in view of the evidence we have reviewed we are unwilling to say that it is so liberal as to shock the judicial conscience or so far out of line with approved awards in somewhat comparable cases or beyond the bounds of reason as to require a remittitur, as defendant requests. In arriving at this conclusion we first carefully reviewed all the cases defendant cited on the subject, noting that each differed in substantial respects from the one before us. As stated in Hunter v. St. Louis Southwestern Railway Company, Mo., 315 S.W.2d 689, 697, "There is no precise method for determining the maximum award which the evidence in this case will support. Each case must be considered upon its own particular facts. Due regard should be given to the purchasing power of the dollar, to the rule of reasonable uniformity of awards for similar injuries and to the fact that the jury and the trial judge were in a better position than this court to measure an award of reasonable compensation, as well as to the fact that the trial court has approved the verdict in question." We have given due regard to these factors and as a result are persuaded that the trial court did not err in refusing to grant a new trial for excessiveness of the verdict.

The judgment is affirmed.

All concur.