**STATE of Missouri, Respondent,**

v.

**Glen CONNER, Appellant.**

**No. 51074.**

Supreme Court of Missouri,

Division No. 2.

June 14, 1965.

Norman H. Anderson, Atty. Gen., Jefferson City, Floyd L. Sperry, Jr., Asst. Atty. Gen., Clinton, for respondent.

Michael D. Konomos, Kansas City, for appellant.

PRITCHARD, Commissioner.

Defendant was charged with murder in the first degree. § 559.010. (Statutory references are to RSMo 1959, V.A.M.S.) Trial was to a jury which resulted in a verdict of guilt of murder in the second degree, § 559.020, and the jury assessed defendant's punishment at 18 years' imprisonment. After motion for new trial, which was overruled, allocution, sentence and judgment in accordance with the verdict followed.

No challenge is made upon this appeal as to the sufficiency of the evidence to sustain the conviction. Rather, defendant urges error (Point I) in the court's failure to exercise his discretion to allow the jury, at its request while deliberating, to examine the shotgun in evidence; (Point II) error in failing to discharge the jury, "with or without motion" by defendant, after unwarranted, prejudicial and inflammatory argument of special counsel for the state; and (Point III) error "in admitting obvious hearsay evidence on behalf of the state and refusing to admit competent evidence on behalf of appellant."

The homicide in this case was preceded by an altercation between defendant and deceased (Phillip Harold Klebenstein), who were brothers-in-law, good friends, and who worked together sanding walls on the day of the homicide. After they returned from their work on the evening of November 2, 1963, they sat around deceased's home in Shannon County, Missouri, drinking beer and talking for about an hour. Defendant then left with his wife and son in deceased's pickup truck. Later, defendant's mother came to deceased's home and stated that defendant was kicking the door down. Shortly thereafter, defendant came to the door and said something about his mother not letting Carol (defendant's wife) do any work around the house. Defendant then started hitting a "what-not" partition, and deceased told him not to do it. Defendant "swung" at deceased, and they began wrestling. Defendant said "he had enough" and they desisted for a short time, then they started fighting again. Deceased knocked defendant down and said, "Glen, haven't you had enough?" Defendant said, "Yes. I'm going home." Defendant "just got up and left."

Later, defendant stepped into the kitchen door with the gun cradled in his arm with the muzzle pointed down, and said, "I came back to show you I'm not afraid." He walked to an entranceway and deceased said to defendant: "Don't do something you'll be sorry for the rest of your life." Deceased was sitting in a chair with a baby, which was taken by his wife after deceased "raised up." His wife walked over to the door, and said, "Oh, no, Glen, don't." She heard the blast, turned around and saw defendant standing there with the gun cradled in his arm. She saw deceased falling, and ran outside and told her mother to call the doctor and an ambulance. Deceased died on the way to the hospital, having been shot in the groin from about two and a half to three feet away.

Sheriff Hubert Wright was called to investigate the shooting. Defendant told him, "What do you want to ask them questions for? There's no use asking them; I'm the man that shot him. I don't deny it." The sheriff found the single barrel shotgun with an expended shell in the chamber (State's Exhibits I and H) in the attic of deceased's residence where deceased's wife had thrown it after the shooting. Defendant identified the gun as being the one he had used. The gun was checked as to the condition of the hammer spring; it was in good working order; but it was easily fired by cocking the hammer and trying the mechanism. The shotgun, on several previous occasions, had discharged accidentally, and was twelve years or more old.

Defendant testified that he remembered little of the incident in question. He did remember having the shotgun in his hand in deceased's home, and that deceased was lying on the floor bleeding. Defendant's defense, submitted to the jury in Instruction No. 4–A, was that the shooting was an accident.

With respect to Point I, above, the transcript on appeal shows that on May 29, 1964, while it was in deliberation on the case, the jury, through the Court Bailiff, Dale Chambers, asked the court if they could see the gun. "THE COURT: I suppose that probably is all right. Where is the gun? Take it in." Nothing further appears upon the record at this point, but upon arguments on motion for new trial, where the matter was presented to the court, the omission from the record was supplied. There the court stated that from his notes and recollection, the request by the jury to see the gun was made around 3:00 or 4:00 o'clock in the afternoon. The court learned that the sheriff had the gun and had left the courtroom with it on the way to Eminence, Missouri. The court, through Mr. Chambers, advised the jury that the sheriff could be returned with the gun in about an hour. Mr. Chambers reported back to the court that the jury said,

"Just give us a little more time." It was not too long after that before the jury returned the verdict. Mr. Chambers, Bailiff, testified under oath on the hearing of the motion substantially to what the court stated had occurred.

 Defendant argues that the court erroneously refused to exercise its discretion with respect to the jury's request. He says that pursuant to the "accident" instruction the jury "was trying to 'properly weigh and consider this defense' when they asked to see and examine the exhibit—the shotgun—in evidence." Point I and the argument thereon are without merit. Quite apparently, the jury was advised that the court *would* have the exhibit for the jury in an hour, but the jury withdrew its request and resumed its deliberations. Counsel for defendant were present when the jury made its request, and made no objection. The court did exercise its discretion to the point where the jury requested more time. State v. Damon, 350 Mo. 949, 169 S.W.2d 382, 383, where the court erroneously stated that over objection he had no discretion to permit the deliberating jury to see exhibits (in a case close on the facts), is inapplicable. So also with the cited cases of State v. Wynne, 356 Mo. 1095, 204 S.W.2d 927, 931 [9], and State v. Rusow, Mo., 106 S.W.2d 429. Point I is overruled.

 With respect to Point II concerning "unwarranted, prejudicial and inflammatory argument" of special counsel for the state, we find no objection whatsoever concerning any part of the argument of which defendant here complains. No error is preserved in the absence of such objection. State v. Goodwin, Mo., 352 S.W.2d 614, 620. Point II is overruled.

 Point III does not state what "hearsay" evidence was admitted by the court on behalf of the state, nor what "competent" evidence was excluded on behalf of the defendant. Nothing is presented for review. Civil Rule 83.05(e), V.A.M.R. [applicable in criminal cases under Rules of Criminal

**338**

Procedure, 28.18, V.A.M.R.]. Furthermore, no assignment of error with respect to admission and exclusion of any evidence is set forth in defendant's motion for new trial. See State v. Gillman, Mo., 354 S.W.2d 843, 850 [7, 8]. Point III is overruled.

An examination of matters covered by Rules of Criminal Procedure, 28.02 and 28.08, V.A.M.R., reveals no error.

The judgment is affirmed.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by PRITCHARD, C., is adopted as the opinion of the Court.

All of the Judges concur.