STATE of Missouri, Plaintiff-Respondent,

v.

Robert Luther FREEMAN, Jr., Defendant-Appellant.

No. 9280.

Missouri Court of Appeals,
Springfield District.

Jan. 4, 1973.

John C. Danforth, Atty. Gen., Mark Mittleman, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

Terry C. Allen, Hyde, Purcell, Wilhoit & Edmundson, Poplar Bluff, for defendant-appellant.

TITUS, Chief Judge.

Defendant was found guilty by a jury of stealing Gary Hopper's motorcycle and sentenced to six years in the Missouri Department of Corrections. §§ 560.156 and 560.161 RSMo 1969, V.A.M.S. He appealed.

At 3 a.m. on the date of the involved incident, a highway patrolman encountered defendant and Richard Moore (respectively 23 and 15 years of age) riding an unlighted motorcycle on the streets of Poplar Bluff. Defendant, according to the patrolman, "had hold of the handle bars and he was in control of the bike." The riders "produced identification" and defendant advised the trooper that he did not have a driver's license. Moore first told the patrolman "that the bike belonged to him and then he later said that, . . . it is not actually mine, it belongs to my brother in Kentucky." The trooper was also informed by Moore that he and defendant "had trouble with the wiring and had quite a bit of mechanical trouble with it and they were checking it out." After admonishing defendant and Moore to take the

motorcycle home and being assured that they would, the patrolman departed and "drove about two blocks and the thought hit me . . . they have stolen that bike, so I turned around, . . . [and] they were pushing the bike up the hill and I saw [defendant] run through the yard . . . . I jumped out of the car and Richard Moore was standing there by the bike and I placed him under arrest." Defendant was not arrested until later that afternoon and said he fled because he did not have a driver's license.

Following an in camera hearing to determine the voluntariness vel non of defendant's statements, the trooper, over objections, was permitted to testify that on the day following defendant's arrest he interviewed defendant alone, warned him of his constitutional rights, that defendant acknowledged he understood his rights and was willing to make a statement. The patrolman had taken notes of the statements and had with him the notes which had been retyped by a secretary. After being warned by the court "You may not read any statement, Trooper. You may refer to your notes . . . but you can't read them and you can only do that to refresh your memory," the patrolman testified the defendant recounted "that he met Richard Moore . . . about 5:00 or 6:00 o'clock. He said we just goofed around and then we met some girls . . . . And he said later we went over to one of the girl's house [and] left there about 2:00 or 2:15 A.M. in the morning and Richard Moore said let's go get my bike and ride around. [Defendant] stated that Richard Moore went up into this yard and got a bike, got the bike that I caught them with, and he said that I didn't go up into the yard, but I helped him to hot wire the bike."

The owner of the motorcycle, Gary Hopper, testified that the evening before the incident he had parked the machine in his front yard "[w]ithin two feet" of the house and did not know it was gone until the next morning. He did not know defendant or Moore and had never given either of them permission to use the motorcycle. Hopper said the ignition and all the wiring to the vehicle was inside the headlight and when he inspected the motorcycle following its removal from his yard, the "headlight was completely gone . . . and the wiring on the inside was all ripped out, and stripped."

Testifying in his own behalf, defendant said he had met Moore only once before the occasion in question and did not know where he lived. Defendant said it was at Moore's suggestion that "we get his motorcycle and go riding around" that they left the girl's house. He "couldn't say definitely which house [Moore] went to," that he didn't "go up to the house with him" but waited "about a half a block away" because Moore said "he didn't want to wake his folks and I had had a few drinks and he said they didn't like for people to drink, and it might cause some trouble." Moore "coasted over the hill" on the motorcycle to where defendant was waiting and defendant asserted that the "seal beam was gone" at that time. Defendant denied that he "hot wired" the motorcycle and first testified he could not remember having told the trooper he had done so—later he emphatically denied he made such a statement to the patrolman.

In defendant's brief the "Points Relied On" are: "I. The trial court erred in overruling [defendant's] motion for judgment of acquittal . . . in that respondent failed to carry its burden of proof. II. The trial court erred in overruling [defendant's] motion to suppress [the trooper's] testimony of [defendant's] purported confession because: A) [The trooper] was allowed to improperly refresh his memory over objection of [defendant]. B) The confession was involuntary." Rule 84.04(d), V.A.M.R., is made applicable in criminal cases by Rule 28.18, V.A. M.R. State v. Conner, Mo., 391 S.W.2d 335, 337–338; State v. Robbins, Mo.App., 455 S.W.2d 24, 26. Defendant's points do violence to Rule 84.04(d), V.A.M.R., because they nowhere state "wherein and

752

why" the State allegedly failed to carry the burden of proof, the trooper was improperly permitted to refresh his memory, or the confession was involuntary. State v. Warren, Mo.App., 469 S.W.2d 662, 663 (3). The points relied on by any appellant should definitely isolate and formulate the precise issues to be reviewed, and if that function is observed at all, it should not be relegated to the argument portion of the brief. State v. Dennison, Mo., 428 S.W.2d 573, 579(8). An appellate court is not obliged to search the transcript or the argument made in the brief to ascertain the meaning of conclusions and abstract asseverations penned as points relied on. School Services of Missouri, Inc. v. Caton, Mo.App., 419 S.W.2d 954, 956(3). Nevertheless, we shall, ex gratia, briefly review what we suppose was intended by the points.

I.

■ It appears to be defendant's theory that the State did not sustain its burden of proof because "the State never asked the owner if at the specific time [of] the acts complained of whether or not permission had been given" for Moore and defendant to take the motorcycle, and because defendant's explanation of his possession of the motorcycle "is uncontradicted in any form." The error in defendant's first assertion lies in the fact the statement is not true. Hopper, the owner of the motorcycle, was specifically asked if he knew the defendant and Moore and if "at any time" he had ever given Moore or defendant "permission to use this motorcycle." In responding to each such question, Hopper answered "No, sir."

II.

■ As to the second assertion: Possession of recently stolen property is sufficient to sustain a conviction of stealing that property [State v. McClanahan, Mo., 419 S.W.2d 20, 21(1)], provided defendant's possession thereof is not too remote in point of time from the crime and that defendant's possession is personal, exclu-

sive, distinct, conscious and unexplained. State v. Clark, Mo., 438 S.W.2d 277, 279 (2). Exclusive possession does not mean the possession must be separate and apart from all others if there is other evidence to connect the defendant with the offense [State v. Chase, Mo. (banc), 444 S.W.2d 398, 403(6)], and in reference to the rule, the word "unexplained" is misleading and not precisely correct without reference to necessary explanation as attested by defendant's urging. Defendant insists his possession was explained by his own uncontradicted testimony. "In other words, it seems to be appellant's theory that if he presents an explanation then the jury cannot draw an unfavorable inference from his possession, whether they believe his explanation or not. But this is not the law. If it were, the rule of evidence under discussion would be useless. In almost every such case some explanation is offered by the accused. The doctrine in this State and elsewhere is that the credibility of the explanation is a question of fact for the jury; and if the jury disbelieves it the case stands with his possession unexplained." State v. Denison, 352 Mo. 572, 579, 178 S.W.2d 449, 454(7); State v. Sallee, Mo., 436 S.W.2d 246, 250(2).

II–a.

The writing employed by the trooper to refresh his recollection of what defendant told him admittedly was not the handwritten notes made by the trooper at the time he conversed with the accused; it was a typewritten copy of those notes prepared by a stenographer at some undisclosed time. Defendant incorrectly insists that when "relying on a memorandum to refresh one's memory, said memorandum has to be written by the witness or examined or found to be correct by him."

■ Whether a witness should be permitted to refresh his memory by referring to a writing or some other object depends upon the particular circumstances present in each case. Permission to do so rests within the sound discretion of the

trial court and is reviewable only upon a showing of abuse. State v. Bradley, 361 Mo. 380, 234 S.W.2d 556, 560(10). If reference to a memorandum stimulates the recollection so that the witness presently remembers the facts and swears to them, the evidence rests in the testimony of the witness and not the memorandum which is used to revive his memory. 98 C.J.S. Witnesses § 358, at p. 86. Consequently, if looking at a memorandum produces a present recollection so that the witness can testify from resensing or revisualization of the event independent of the writing, the time when the memorandum was prepared (Smith v. Bergmann, Mo.App., 377 S.W.2d 519, 521) or the person who prepared it [Thos. Cusack Co. v. Lubrite Refining Co., Mo.App., 261 S.W. 727, 729(6)], or whether it be an original writing or a copy (58 Am.Jur., Witnesses, § 587, pp. 327–328) is of little moment. The trooper testified the typewritten copy "is the same thing" as his original notes. He was instructed by the trial court that he could " 'refer to your notes . . . and you can only do that to refresh your memory.' " There is nothing to indicate the trooper disobeyed this admonition or that the trial court abused its discretion.

## II–b.

■ Ere the trooper was permitted to testify concerning any statements made to him by the defendant, the trial court ■

conducted an appropriate hearing in chambers. State v. Fair, Mo. (banc), 467 S.W. 2d 938, 942. At the conclusion of this hearing the trial court stated: "The Court finds that the statement is voluntarily made and may be presented to the Jury." Prior to this it had been shown to the court that before the statements were made defendant had been fully advised of his constitutional rights, indicated he understood his rights, and had not been subjected to any threat or promise by way of inducing him to speak. Defendant did not deny any of this testimony or offer evidence to the contrary; likewise, defendant did not undertake to demonstrate that he was mentally or physically incapable of giving a voluntary statement. Moreover, the only portion of the statements repeated by the trooper which was in any way contrary to defendant's own testimony concerned the hot wiring of the motorcycle. A bare assertion in a brief that a statement was involuntary cannot be considered on appeal when it has no factual foundation and is not supported by any evidence appearing in the transcript. Kansas City v. Bradley, Mo.App., 420 S.W.2d 68, 72(6).

The judgment is affirmed.

STONE and HOGAN, JJ., concur.

BILLINGS, J., not participating, because not a member of the court when this cause was submitted.