STATE of Missouri, Plaintiff-Respondent,

v.

Henry Glade SANDERSON, Defendant-Appellant.

No. 36437.

Missouri Court of Appeals, St. Louis District, Division Two.

Sept. 30, 1975.

Charles D. Kitchin, Public Defender, Christelle Adelman-Adler, Asst. Public Defender, St. Louis, for defendant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Scott A. Raisher, Asst. Attys. Gen., Jefferson City, Brendan Ryan, Circuit Atty., Richard G. Callahan, Asst. Atty. Gen., St. Louis, for plaintiff-respondent.

KELLY, Judge.

Henry Sanderson, hereinafter the defendant, appeals from his conviction of burglary in the second degree § 560.045 RSMo. 1969, in the Circuit Court of the City of St. Louis following a jury waived trial. The trial court after finding the defendant guilty as charged, sentenced him to two years in the custody of the Missouri Department of Corrections. We affirm.

On appeal the defendant presents three Points Relied On as basis for his contention that his conviction should be reversed and the defendant discharged. These Points are: that the trial court erred in,

1. overruling defendant's motion for judgment of acquittal at the close of all the evidence because (a) the evidence was insufficient to support a conviction on the charge of burglary in the second degree because there was no showing that a breaking occurred and (b) the facts and circumstances offered to prove the offense of burglary were neither consistent with the guilt of the defendant nor inconsistent with any reasonable theory of his innocence, and

2. overruling defendant's objection to the introduction into evidence of the pocket knife as evidence because it was not proven sufficiently to be connected with the alleged burglary, and

3. in denying defendant's request to have Mr. Brooks in the courtroom during the defendant's testimony.

■ In view of Rule 26.01(b) that in a jury-waived criminal case the findings of the court shall have the force and effect of the verdict of a jury, and after the defendant has waived a jury, was tried by the court, convicted and appeals, the appellate court reviews the evidence in the same manner as though a verdict of guilty had been returned by a jury, and hence if there was substantial evidence to support the finding of the trial court its judgment should be affirmed. *State v. Daniels,* 487 S.W.2d 465, 469[4] (Mo.1972).

■ On appeal, after conviction, the reviewing court must accept the State's evidence as true, together with all reasonable inferences deducible therefrom, and all evidence and inferences to the contrary must be disregarded. *State v. Cobb,* 444 S.W.2d 408, 412[3] (Mo. banc 1969), *State v. Stapleton,* 518 S.W.2d 292, 296[1] (Mo. banc 1975).

Viewed in this light we conclude that the trier of fact could have found from the evidence that on January 15, 1974, Louis J. Brooks, Jr., resided at 6024 Cabanne Avenue in the City of St. Louis, in a three story residence. On that morning Mr. Brooks left for work sometime between 7:00 and 7:30 a. m. and at that time, to the best of his memory, both outside doors were locked. He testified that he normally kept the inside doors to his home closed but that when he was summoned to return to his home at about 10:00 a. m. that same morning he noticed that the inside doors were open, and after entering into his home he found that his third-floor desk had been "rifled," all of his papers had been mixed-up, and some money was missing. The outside doors to his home were closed when he returned there with the police. He did not know this defendant and he never gave any permission to defendant or a Mr. Haines to enter his house.

Rose Singfield testified that on the morning in question she resided at 6034 West Cabanne Place, directly to the west of Mr. Brooks' residence. At approximately 11:00 a. m. that morning she was alerted by her dog's barking and she looked out of her living room window and observed two men

walking from Mr. Brooks' back yard via his driveway, which is located between the Brooks and Singfield residences. She saw the men turn around at the front of the house and go towards the front porch of Mr. Brooks' home; however, she could not see them on the steps or on the porch because her view was obstructed by the corner of the Brooks' house. She did, "a second later," notice movement on the first floor inside the Brooks' home, and then called Mr. Brooks' nephew's wife to ascertain if anyone had permission to enter the house. After completing this telephone call she returned to her dining room window where she observed the two men walking inside Mr. Brooks' home. She was unable to observe these two men at all times, but saw the police pull into Mr. Brooks' driveway while the two men were still in the house. She then moved to her kitchen window when she observed the two men she had seen earlier in the Brooks' driveway, standing in Mr. Brooks' backyard with the police officer. She identified this defendant as one of the two men she observed in custody of the police officer at the scene and testified that the man she saw walking down the driveway had on the same type of jacket as the men she saw saw walking around in the house.

Patrolman George Jackovich, the police officer dispatched to the scene, parked his patrol car at the front of the house upon his arrival there and proceeded on foot to the rear of the Brooks' residence. As he turned the corner at the rear of the house he observed two men run down the steps of the rear porch and through the backyard, whereupon he ordered them to halt. The two men stopped and he placed them under arrest. One of the two men was the defendant. At that time the back door of the Brooks' residence was open. The police officer identified a pocket knife, State's Exhibit No. 4, as the pocket knife he took from the defendant at the time of the arrest and he also testified that he took some money from the possession of one of the two men he had arrested at the scene but was unable to recall whether the defendant had any money on him at that time.

Defendant took the stand and testified in his own behalf. The gist of his testimony was that on the morning in question he went to Mr. Brooks' home seeking work. He testified that he had shovelled snow for Mr. Brooks on two prior occasions and was paid for these services. On this occasion, accompanied by Ronald Haines, he returned to the Brooks' residence to inquire about additional work, approaching the Brooks' home from the front. He went to the front porch and rang the doorbell. When no one answered, he then walked to the back of the house to see if Mr. Brooks was there. He did not ascend the backporch. When he noted that Mr. Brooks was not in the backyard, he made one step to return to the front of the home when he saw the police officer who ordered both Mr. Haines and himself to stop, handcuffed them, and took them to the front of the house. He denied that he had been inside the Brooks' house on that fateful day, that he was on the backporch when he saw the police officer, and testified that at the time of his arrest he was wearing a brown and beige checkered jacket. He contradicted the police officer when he testified that the back door to Mr. Brooks' house was closed.

At the conclusion of the evidence in the case a motion for judgment of acquittal was filed and overruled.

Defendant now contends that "trial court erred in overruling the motion for judgment of acquittal at the close of all the evidence because: A. The evidence was insufficient to support a conviction on the charge of burglary in that there was no showing that a breaking occurred," and B. "The facts and circumstances offered to prove the offense of burglary were neither consistent with the guilt of the defendant nor inconsistent with any reasonable theory of his innocence."

The elements of Burglary in the Second Degree involving a dwelling house are (1) the breaking and (2) the entering

thereof with (3) the intent to commit a felony or to steal therein. *State v. Sallee,* 436 S.W.2d 246, 251[5] (Mo.1969). The opening of a closed and unlocked door is sufficient to constitute a "breaking" within the terms of the statute, so long as it is done with a burglarious intent. *State v. Degraffenreid,* 477 S.W.2d 57, 61[9] (Mo. banc 1972). The evidence in this case, the trial court could find, in support of the State's theory, is that before Mr. Brooks left for work on the morning of January 15, 1974, he closed both the inside and the outside doors to his home and, as far as he could remember, locked them. A prosecuting witness is not required to speak with absolute certainty if the trier of the facts is convinced beyond a reasonable doubt that for anyone to gain entry into the house they had to open either an inner or outer door. Upon his arrival, the police officer testified that he found the rear outside door to the Brooks' residence open. There was further evidence that Mr. Brooks' house was entered and that his desk was rifled. The circumstances, we conclude, when measured against the general rule whether the facts and circumstances are consistent with each other and with the hypothesis of defendant's guilt, and whether they are inconsistent and irreconcilable with his innocence, and point so clearly and satisfactorily to his guilt that they exclude every reasonable hypothesis of innocence, are sufficient to support the verdict in this case. *State v. Sallee,* supra, l. c. 250; *State v. Whaley,* 512 S.W.2d 431, 433[1] (Mo.App.1974). We must not overlook the fact that Mrs. Singfield saw two men inside the house at the time the police officer pulled up in the police car, and almost immediately, when the police officer approached the back corner of the prosecuting witness' house, he observed two men run down the steps of the rear porch and through the backyard. There is no evidence that Mr. Brooks gave this defendant permission to enter his home, and the evidence is clear that he was one of the men inside the house. Whether the doors were locked is not the decisive

issue. That they were closed is not contested. Even the defendant did not testify that the doors were open at any time while he and his compatriot were on the premises. In *State v. G'Sell,* 497 S.W.2d 882 (Mo.App. 1973), this court, l. c. 884[3], said: "a conviction is warranted if the State shows a chain of connected and interdependent circumstances which, taken as a whole, preclude any reasonable theory of defendant's innocence . . . This means a conviction by circumstantial evidence may rest upon accumulated facts, no one of which creates more than a suspicion of guilt." We believe this to be the case here, and find no merit to the defendant's contention.

Defendant's second Point relative to the admission into evidence of the pocket knife found in possession of the defendant at the time of his arrest in the backyard of the burglarized house is presented in this court on the grounds that it was not proven to be sufficiently connected with the alleged burglary. At trial, and in defendant's Motion for New Trial, the objection to the pocket knife—State's Exhibit No. 4—was directed to its relevancy and it is in that light that we shall consider it here.

In *State v. Tevis,* 340 S.W.2d 415, 420[11] (Mo.App.1960) it was held that evidence is relevant if the fact it tends to prove or disprove is a fact in issue, or to corroborate evidence which is relevant and which bears on the principal issue. Before evidence can be excluded on the ground that it is irrelevant, it is essential that it appear so beyond doubt. If the question of relevancy is doubtful, the settled rule is that the evidence should go to the trier of the facts for the evaluation of it. As the prosecutor pointed out when the objection was made, "Pocket knives frequently are used to spring locks like credit cards." This is particularly apropos in a case of this type where there was no evidence of any prying or physical damage to the means of entry or exit from the dwelling. Mr. Brooks had testified that when he left the house that morning this back door was closed and locked but when the police officer observed

the back door after taking the defendant into custody, he observed that this same back door was opened. We conclude that the trial judge, from this evidence, could infer that the defendant used the pocket knife to spring the lock on the door. We likewise rule this Point against defendant. See *State v. Alred,* 524 S.W.2d 895, 896[1] (Mo.App.1975).

Defendant's final contention is that the trial court erred in denying his request to have Mr. Brooks remain in the courtroom during the defendant's testimony is likewise without merit.[1] Prior to the commencement of the trial, and immediately after the trial court determined that the defendant had voluntarily and understandingly waived his right to a trial by jury, defendant's counsel requested that any witnesses in the courtroom be "sequestered from the witnesses who are testifying." The trial court responded: "At the request of both the State and defendant, witnesses who will testify should not remain in the courtroom." After Mr. Brooks testified the trial court inquired of defense counsel, following re-direct examination, if she cared to "further cross-examine" the witness. Defense counsel replied that she would like for the witness to stay in the courtroom during the defendant's testimony and "possibly re-question him after that." The trial court advised counsel that unless she was going to use the witness for further cross-examination and if she did not have any further need of the witness, he was going to excuse the witness. Defendant's counsel then requested that Mr. Brooks stay for the purpose of further cross-examination after the defendant testified. The trial court denied that request on the grounds that that was not the proper procedure, but stated that he

would permit further cross-examination then. Defense counsel stated that she had nothing further at that time. The witness was excused.

After the conclusion of the prosecution's case, and after defendant's motion for judgment of acquittal had been overruled, defense counsel requested that Mr. Brooks be "brought up" and stated that the only purpose for this request was Mr. Sanderson's testimony might refresh the witness' memory that the defendant had been to Mr. Brooks' home and shovelled snow for him for pay. The trial court denied this request but, instead offered to have Mr. Brooks return to the stand for further cross-examination if defense counsel so desired. Defense counsel refused this offer and stated: "Your Honor, we have nothing further from Mr. Brooks."

■ Although this contention of the defendant is presented to us as one of "refreshing a witness' memory," what was really sought by this suggested procedure was a chance that Mr. Brooks would change his testimony after hearing the defendant testify to facts contradictory to the denial of Mr. Brooks that he had known the defendant prior to January 15, 1974, or had any recollection of hiring the defendant to shovel snow from his sidewalk and porches almost two weeks prior to that date. A court may permit a party to put questions to his own witness on direct examination to refresh his recollection by directing his attention to a particular matter, by referring to a prior statement or prior testimony, or by reading to him his prior testimony or a portion thereof, especially when it appears that the witness is hostile or evasive. 2

---

1. In his motion for new trial the defendant did not raise this point in the same phraseology, for there it was raised as follows: "The court erred in disallowing the movant to recall Mr. Brooks as a defense witness following the testimony of the defendant." We are being asked here to review an action of the trial court on grounds different than that presented to it in defendant's motion for new trial. A review of the trial tran-

script reveals that there was at no time any offer by the defendant to call this witness as "a defense witness." The request was to cross-examine him further after he had heard the defendant's testimony which would be in conflict with Mr. Brooks denial that he knew defendant and was not certain whether *he had ever hired someone to shov*el snow, although it seemed to him he had.

Wharton's Criminal Evidence § 415 (13th ed. 1972). Cross-examination is the better vehicle available to a party to test the recollection of a witness offered by an opponent. This method was tendered to the defense counsel by the trial court and defendant refused, stating that he had no further questions.

Defendant relies on *State v. Bradley,* 361 Mo. 267, 234 S.W.2d 556 (1950), but we do not find *Bradley* in point here. In *Bradley* the sheriff of Randolph County, a State's witness, was permitted over defendant's objection, to refer to some notes he had made from his own memory two days following the event, of a conversation he had with the defendant while en route from the place where the defendant was delivered into his custody by Kansas City police officers, to Moberly, Missouri. Defendant's objection went to the trustworthiness of the memorandum because it was not made at the time "the conversation was had." *Bradley* held that the question of permitting the "refreshment of memory" of a witness depends upon the circumstances of the particular case, and the answer is within the discretion of the trial court reviewable only upon abuse. It found no abuse of the trial court's discretion and further held that it was not unreasonable to assume that the notes were made at a time when the sheriff accurately recalled the defendant's language. That is not the issue here.

We believe that in the circumstances of this case the defendant was not prejudiced by the trial court's denial of his request that the prosecuting witness be required to remain in the courtroom during the defendant's testimony and that there was no abuse of discretion involved. Mr. Brooks was unequivocal and unshaken in his testimony that he did not know the defendant prior to January 15, 1975, and there is nothing to indicate that he would change his story in this respect had he listened to the defendant's contradictory testimony. We rule this Point against the defendant.

We have examined those portions of the record as required by Rule 28.02 and find them to be sufficient.

The conviction of defendant is affirmed.

CLEMENS, P. J., and STEWART, J., concur.