STATE of Missouri, Respondent,

v.

Jerry L. WILLIAMS, Appellant.

No. 59137.

Supreme Court of Missouri,
En Banc.

Nov. 25, 1975.

M. Shebourne Bryant, Willard B. Bunch, Public Defender, James F. Speck, Asst. Public Defender, Kansas City, for appellant.

John C. Danforth, Atty. Gen., Paul R. Otto, Asst. Atty. Gen., for respondent.

HOLMAN, Judge.

Defendant was charged with the offense of murder in the first degree. See Section 559.010.[1] Under the provisions of Rule 26.-01, V.A.M.R., defendant waived a jury and was tried by the court. He was found

1. All statutory references are to RSMo 1969, V.A.M.S.

guilty of murder in the second degree and his punishment was fixed at imprisonment for a term of 12 years. No findings of fact were requested or made by the court and hence, under Rule 26.01(c) "All fact issues . . . shall be deemed found in accordance with the result reached." Defendant duly appealed to the Court of Appeals, Kansas City District.

The sole contention of defendant on appeal is that he could not be convicted of murder in the second degree because the evidence showed that he was guilty only of first degree felony murder. The appeals court filed an opinion in which it discussed the issue but made no disposition of the case. Instead, it pointed out that there was a conflict between the cases decided by this court and certified the cause here for examination of existing law in accordance with Art. V, Sec. 10, Mo.Const.

Section 10, supra, provides that "Cases pending in the court of appeals . . . may be transferred to the supreme court by order of the participating district of the court of appeals, after opinion, or by order of the supreme court before or after opinion . . . ." We deem it advisable to point out that the court of appeals in said section is given the power to transfer a case to the supreme court only "after opinion." The word "opinion" has many meanings but when applied to a judicial proceeding it has been defined as "the direct, solemn, and deliberate decision of the court upon the issues raised by the record and presented in the argument." 21 C.J.S. Courts § 217, p. 401, and as "The statement by a judge or court of the decision reached in regard to a cause tried or argued before them, expounding the law as applied to the case, and detailing the reasons upon which the judgment is based." Black's Law Dictionary, Fourth Edition, p. 1243.

We have the view that "opinion" as used in Section 10 means a document which announces a decision which in some manner disposes of the case. The "opinion" filed in this case was actually a memorandum explaining the reason for transfer. We accordingly conclude that the court of appeals was not authorized to transfer this case under the circumstances indicated. However, we have decided that the situation detailed by the court of appeals would have merited a transfer by this court prior to opinion if such had been requested. We will therefore consider the action taken by the court of appeals as a request for transfer and accordingly will retain the case as though transferred by order of this court and will finally determine the cause the same as on original appeal. We affirm.

Defendant's brief contains the following statement: "Appellant concedes that there is sufficient evidence in the record to sustain a conviction of felony Murder First Degree." In view of that concession and for other reasons we have concluded that a brief statement of facts will suffice.

The principal witness used by the State in making its case against defendant was Deborah Clark. She testified that she was with Nathanial Johns, Sammy Lewis, Willie Dove and defendant on the night of May 12–13, 1973; that they spent several hours in two night clubs located in Kansas; that as they were returning in a car defendant suggested that they rob his neighbor, James Main; that defendant further said that Lewis and Dove could go in first and put something over his face because Main knew Johns and him; that after they had parked the car in defendant's back yard Dove and Lewis got out and went toward Main's place; that after 10 or 15 minutes defendant and Johns went over there and 15 or 20 minutes later returned to the car; that Lewis and Dove then came back to the car with Dove carrying a radio.

This witness further testified that all of these parties then drove over to her house where defendant and Dove got into a fight over some money defendant said Dove should give him.

Defendant testified and stated that Lewis suggested the robbing of Main and that he and Johns refused to participate; that

Lewis (who had a gun) and Dove went to Main's house and that he and Johns went in later because they heard him calling for help; that Dove was tying Main and Lewis was kicking him in the area of his head; that they tried to stop Dove and Lewis from continuing such conduct saying "You are going to kill him" to which Lewis replied "So what?" Defendant further stated that after the attackers had protested their efforts to stop the attack and Lewis had threatened to kill him if he "snitched" he and Johns left the Main apartment.

After his arrest defendant gave a statement to the police in which the following appears:

"Q   While you were riding back from Kansas, what was the conversation between the five of you?

"A   Sammy Lewis was talking about making some money by robbing somebody. I told him I didn't want to do that but I would burglarize somebody.

"Q   When did it come up in the conversation about robbing James Main?

"A   When we got in the driveway, Sammy Lewis asked me about the dude that lived next door. I told him I knew him and I wasn't going in.

"Q   What reason did you have for not wanting to go in?

"A   Cause I figured I knew him and he knew me.

"Q   Before Sammy and Willie went in, did you all have some sort of plan?

"A   Yeah, I had it in mind going in and taking his TV.

"Q   When were you supposed to go in?

"A   I was supposed to go in when they came back to get me, but they never did come back and I heard Jim hollering, then me and Nate went in and tried to stop them. . . .

"Q   Why was the deceased tied up?

"A   Because they was supposed to tie him up so he couldn't see me and Nate. . . .

"Q   How long would you say that you all were in the deceased apartment?

"A   Sammy and Willie was probably in there about 15 minutes, myself about 3 minutes. . . ."

At about 3 p. m. on May 13, the police received a call requesting that they come to the address of the Main apartment. Upon arrival they found Mr. Main's body with hands and legs tied, a cord around his neck and a blanket covering his head. The cause of death was determined to be "ligature strangulation of the neck."

Section 559.010 (as it existed at the time of this offense) reads as follows: "Every murder which shall be committed by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, and every homicide which shall be committed in the perpetration or attempt to perpetrate any arson, rape, robbery, burglary or mayhem, shall be deemed murder in the first degree." And in Section 559.020 it is provided that "All other kinds of murder at common law, not herein declared to be manslaughter or justifiable or excusable homicide, shall be deemed murder in the second degree."

As indicated, defendant concedes that the evidence supports a conviction of murder in the first degree under the felony murder doctrine specified in Section 559.010, supra. He states, however, that since he did not aid or abet or in any other way participate in the actual killing of deceased he is not guilty of conventional second degree murder. And since he did not commit any felony other than robbery he is not guilty of second degree felony murder. Defendant argues, therefore, that since he was, in effect, acquitted of murder first and is not shown to be guilty of murder second, either conventional or felony, the conviction should be reversed and he should be discharged.

The State takes the position that murder second is a lesser included offense of murder first and hence the court could properly

find defendant guilty thereof. Further, the State says that by reason of Rule 26.06 and certain statutes hereinafter discussed defendant is precluded from complaining of the fact that he was shown to be guilty of a higher degree of murder than that of which he was convicted.

Rule 26.06 provides that: "A defendant in any criminal case shall have no just cause for complaint because: . . . (2) the evidence showed or tended to show him to be guilty of a higher degree of the offense than that of which he was convicted." A similar provision is contained in Section 545.030 which states that: "No indictment or information shall be deemed invalid, nor shall the trial, judgment or other proceedings thereon be stayed, arrested *or in any manner affected*: . . . (17) Because the evidence shows or tends to show him to be guilty of a higher degree of the offense than that of which he is convicted; . ." (Emphasis ours). And more specifically applicable to the instant case is Section 556.-220 which provides that: ". . . any person found guilty of murder in the second degree, or of any degree of manslaughter, shall be punished according to the verdict of the jury, although the evidence in the case shows him to be guilty of a higher degree of homicide."

A case squarely in point is the early and leading case of *State v. Bobbitt*, 215 Mo. 10, 114 S.W. 511 (1908) in which the proof showed defendant guilty of felony murder first by arson and his conviction of second degree murder was upheld even though he did not participate in the actual execution of the offense. In holding that murder second was an included lesser offense under those circumstances the court stated at l. c. 517 that "It has been repeatedly decided by this court that the statute dividing murder into two degrees is a statute of classification and not of definition, and that no homicide can be murder either in the first or second degree which was not murder at the common law. *State v. Shock*, 68 Mo. 552; *State v. Curtis*, 70 Mo. [594] 598; *State v. Robinson*, 73 Mo. 306; *State v. Wagner*, 78

Mo. 644, 47 Am.Rep. 131. A homicide committed in the perpetration of arson is not a distinct offense. It is only one of the methods by which murder in the first degree may be committed." In answer to the precise contention now before us the court quoted applicable portions of the statutes which are now 545.030 and 556.020 and held that thereunder defendant was precluded from complaining.

To like effect is the very early case of *State v. Wagner*, 78 Mo. 644 (1883) in which the court stated that murder by poison was murder first only and that it was error to instruct on murder second, the offense of which defendant was convicted. The court, however, held that by reason of the statute (now 556.220) the error would not warrant a reversal.

A contention similar to the one at bar was also made in the case of *State v. Jewell*, 473 S.W.2d 734 (Mo.1971). In that felony murder case defendant was convicted of murder second. In ruling that murder second was an included offense the court stated: "The distinction generally made between the degrees of murder is in the presence or absence of the element of deliberation. The elements of second-degree murder are the premeditated, wilful, intentional taking of human life with malice aforethought; first degree murder requires the additional element of deliberation. *State v. Davis*, Mo., 400 S.W.2d 141, 145[1, 2]; *State v. Kauffman*, 335 Mo. 611, 73 S.W.2d 217, 220[4, 5]. And if the killing is committed during the actual or attempted perpetration of one of the felonies enumerated in Section 559.010, proof of the underlying felony stands in lieu of and is the equivalent of the necessary malice, premeditation, and deliberation and is tantamount to proof of first-degree murder. . . . Consequently, whether a killing amounting to murder, first degree, is committed in such manner that proof of its elements is constructively presumed, as in felony-murder, rather than directly, it is nonetheless murder, first degree, and neces-

sarily embodies murder, second degree, as an included offense." In answer to the further contention that such a holding amounted to a denial of due process the court held such to be without merit quoting both Rule 26.06 and Section 556.220 as support for the ruling that defendant could not complain of his second degree conviction.

For other cases in which the foregoing rule and statutes have been applied see *State v. Wallach*, 389 S.W.2d 7[2] (Mo.1965); *State v. Sebastian*, 215 Mo. 58, 114 S.W. 522[1] (Mo.1908); *State v. West*, 202 Mo. 128, 100 S.W. 478[3] (Mo.1907); *State v. McQuerry*, 406 S.W.2d 624[10] (Mo.1966); *State v. Nibarger*, 391 S.W.2d 846[1] (Mo. 1965); *State v. Tolias*, 326 S.W.2d 329[13] (Mo.1959) and *State v. Allison*, 330 Mo. 773, 51 S.W.2d 51[8] (1932).

In support of his contention defendant relies primarily on the case of *State v. Jasper*, 486 S.W.2d 268 (Mo.1972) a case which the court of appeals concluded could be understood to hold that conventional murder second is not a lesser included offense of felony murder first. In *Jasper* defendant had participated in an armed robbery and was fleeing from the scene in a car being driven by a confederate. A police officer had called to them to halt and had fired a shot at the car. During a high-speed chase which followed, the car violated a traffic signal and collided with another car killing the three occupants thereof. Upon trial the court gave felony and conventional first degree instructions and a conventional second degree instruction. Defendant was found guilty of second degree murder. Defendant contended that there was no evidence to sustain a conviction of murder second. The court held that since there was evidence that defendant was guilty of the felony of resisting lawful arrest the evidence was sufficient to submit common law felony murder second. The case was remanded for a new trial upon that theory of submission.

We recognize that the result in *Jasper* would appear to be in conflict with our decision today. However, it should be noted that the court in *Jasper* did not in any manner consider the rule and statutes that form the basis of our decision and therefore there is no conflict whatever relating to the theory we have relied upon.

Defendant has also cited *State v. Bradley*, 234 S.W.2d 556 (Mo.1950); *State v. Burnett*, 365 Mo. 1060, 293 S.W.2d 335 (1956) and *State v. Conway*, 351 Mo. 126, 171 S.W.2d 677 (1943). All these are cases in which the defendant was convicted of felony murder first. Defendant points to the fact that they contain statements to the effect that in felony murder cases the only submissible crime is murder first and in *Burnett* and *Bradley* it was held that for that reason it was not error for the court to fail to instruct on murder second and manslaughter. It should be noted, however, that these cases are not in conflict with our decision because the court did not hold that defendant could have complained if the court had given an instruction submitting murder second. *Conway* is not applicable because there the conviction was reversed because the evidence failed to show that defendant had committed the felony relied on as an element of the felony murder submission.

As heretofore stated we hold that the judgment should be affirmed. While some of the cases heretofore cited would support a holding that conventional murder second is necessarily a lesser included offense of felony murder first we need not and do not place our decision on that theory. We rule that in the situation before us the defendant has no just cause to complain of the second degree conviction. The rule and statutes heretofore quoted specifically provide that a defendant cannot complain because the evidence shows him guilty of a higher *degree* of the offense than that of which he was convicted. Certainly murder first is a higher *degree* of homicide than murder second regardless of whether it may be described as felony or conventional murder first.

■ We are mindful that the notes on use contained in our revisions of MAI–CR effective on 3–1–75 and 9–28–75 state that in a felony murder submission murder second should not be submitted unless justified by the evidence. Those notes, however, have no application to this 1973 court tried case.

Judgment affirmed.

MORGAN, HENLEY, and DONNELLY, JJ., concur.

BARDGETT, J., concurs in result in separate concurring opinion filed.

FINCH, J., concurs in result in separate concurring opinion filed.

SEILER, C. J., concurs in part and dissents in part in separate opinion filed.

BARDGETT, Judge (concurring in result).

I concur in the affirmance of defendant's conviction of murder in the second degree but do not agree that the conviction can be affirmed on the basis set forth in the principal opinion. I agree with the analyses of the law as set forth in the separate opinions of Seiler, C. J., and Finch, J.

This defendant was charged in common form with murder in the first degree. This charge is sufficient to support a conviction of murder in the second degree if there is evidence sufficient to support that conviction. The case was tried to the court without a jury and, therefore, there were no specific submissions of the various degrees of homicide or methods of committing murder because, obviously, there were no instructions given.

At the close of the case the court took the case under submission. The court was not requested to and, therefore, did not make specific findings of fact but rather entered what would be called a general verdict finding defendant guilty of murder in the second degree. The question therefore is: Was there evidence upon which the court could find the defendant guilty of murder in the second degree?

Felony murder in the second degree is committed when a person engages in a felony, other than those enumerated in section 559.010 (as it existed at the time of this offense) during which a homicide occurs. *State v. Jasper*, 486 S.W.2d 268 (Mo. banc 1972); *State v. Chambers*, 524 S.W.2d 826 (Mo. banc 1975). In *Chambers* the underlying felony was stealing an automobile. Sections 560.156, 560.161, subd. 2(2).

In this case the evidence was sufficient to support a finding that defendant and others intended to steal certain items from the dwelling house of James Main; that defendant intended to steal a television set, and the participants decided that two of them who were not known to Mr. Main would enter the home and blindfold Main so he would not recognize his neighbor—the defendant. They entered the home and shortly thereafter defendant joined them. They stole a radio and a sweater from Main's home. Main was killed in the course of this theft.

Section 560.156, subd. 1(2) defines stealing and section 560.161, subd. 2(1) defines as a felony the stealing of property from a dwelling house or a person regardless of its value.

*State v. Chambers, supra*, holds that a homicide occurring during the perpetration of a felony of stealing constitutes murder in the second degree.

In *Jasper, supra*, the court held there was sufficient evidence upon which the jury could find defendant guilty of murder second degree but the case had to be remanded for a new trial because the case was not submitted to the jury with an instruction under the common-law-felony-murder rule.

In a court-tried case, such as the instant one, instructions are not used. The case was submitted to the judge on the indictment which included within its scope murder in the second degree and the evidence

in the case. In saying the indictment included within its scope murder in the second degree, I mean that under this indictment evidence of second degree murder was admissible. Had this been a jury case, an instruction submitting common-law-felony murder in the second degree would have been proper because the evidence supported findings that defendant engaged in the felony of stealing from a dwelling house and that a homicide was perpetrated in the course of committing that felony.

But, as indicated supra, this was not a jury case and therefore instructions were not needed nor used. Of course, a court cannot convict a person of an offense if the evidence does not support a finding that the defendant was guilty of the offense no more than could a jury do so.

So the question in this case, as I see it, is whether there was *evidence* upon which the defendant could be found guilty of second-degree murder. As noted supra, I believe there was sufficient evidence to support a finding that defendant engaged in the felony of stealing from a dwelling house and that Mr. Main was killed in the perpetration of that felony.

On this basis I would affirm the judgment of the circuit court and, therefore, I concur in the affirmance of that judgment.

FINCH, Judge (concurring in result).

I concur in the affirmance of defendant's conviction of murder in the second degree but do not agree that the conviction can be affirmed on the basis set forth in the principal opinion.

In the separate opinions filed herein by Seiler, C. J. and Bardgett, J., the view is expressed that the conviction in this court tried case should be affirmed for the reason that the evidence supports a conviction of common law felony murder which is murder in the second degree. I agree and concur in what they say with reference thereto. The evidence is sufficient to find that defendant planned with others to steal items from the dwelling house of James Main and that

such intention was consummated. The fact that what occurred could have been found to constitute robbery rather than simply larceny from a dwelling house does not prevent that conclusion because larceny from the person (in this case occurring in Main's dwelling house) is an included offense of robbery, and conviction therefor may be had under a charge of robbery. *State v. Gardner*, 356 Mo. 1015, 204 S.W.2d 716 (1947); 67 Am.Jur.2d, Robbery, § 7, p. 34. In this case wherein defendant was charged in common form with murder in the first degree, proof of a robbery and a homicide in connection therewith was admissible. Such proof, clearly present, supports a conviction of murder in the second degree based on the evidence sufficient to show larceny from a dwelling. I would affirm the conviction on that basis.

I also concur in what Seiler, C. J., says in concluding that this conviction cannot be affirmed on the basis of Rule 26.06 V.A. M.R. or § 556.220 RSMo 1969. In addition to what he says on the subject, I would point out that this court has held on numerous occasions that when the evidence shows that a homicide was committed in the perpetration of one of the felonies enumerated in the first degree felony murder statute and the court submitted the case on a first degree felony murder instruction, the court did not commit error in refusing defendant's request that a second degree murder instruction be given. *State v. Burnett*, 365 Mo. 1060, 293 S.W.2d 335, 343 (1956); *State v. Bradley*, 234 S.W.2d 556, 563 (Mo. 1950). Yet, under the holding of the principal opinion, if the trial court in those cases had given a second degree murder instruction over defendant's objection he would not be permitted to complain, and the giving of the instruction, held to be improper and not justified under the rulings in *Burnett, Bradley* and similar cases, would not be reversible error. Thus, under the principal opinion, in a situation wherein the court concludes that the evidence does not justify or permit a second degree murder instruc-

tion, it is not error to refuse the same if the defendant requests it, but at the same time, it is not error to give the instruction even if defendant objects to it. I cannot concur in such a "heads I win, tails you lose" result. I do not believe it can be justified either on the basis of Rule 26.06 or § 556.220 RSMo 1969. If the rule and statute do authorize that kind of inconsistent result, they would, at least to that extent, be unconstitutional.

In addition, I should point out that I consider the principal opinion to be in conflict with the opinion of this court in *State v. Jasper*, 486 S.W.2d 268 (Mo. banc 1972). The principal opinion recognizes that it would appear to be in conflict with the result in *Jasper*, but concludes that a conflict actually does not exist, that conclusion being based on its premise that the court in *Jasper* did not consider Rule 26.06 or § 556.-220. I cannot agree with that premise. Our court files disclose that applicability of the rule and statute in question were present in *Jasper*. The State urged affirmance of the conviction therein on the basis of Rule 26.06 and § 556.220. Defendant opposed such result, arguing that the rule and statute did not authorize submission of lesser offenses when there was no evidence to support such a submission. The divisional opinion discussed this issue and stated that the court would agree that a judgment of conviction without support in the evidence would be unlawful but that the principle was inapplicable because there was evidence to support a conviction of second degree felony murder.

If the court en banc had accepted the State's contention that Rule 26.06 and § 556.220 authorized affirmance on the basis that the defendant could have been convicted of murder in the first degree and hence could not complain, even in the absence of evidence to support the conviction, it would have affirmed the conviction instead of reversing and remanding for new trial. The court's opinion did not discuss Rule 26.06 or § 556.220, but necessarily the court rejected their applicability when it reversed and remanded for new trial.

SEILER, Chief Justice (concurring in part and dissenting in part).

The opinion by Holman, J., and the opinion concurring in result by Bardgett, J. (soundly, I believe) do not attempt to place the decision on the ground that conventional murder is a lesser included offense of felony murder first. In my opinion it is not, and the thesis advanced in *State v. Bobbitt*, 215 Mo. 10, 114 S.W. 511 (1908) that first degree felony murder involves deliberation and premeditation is no more than fiction. There are many instances where neither one is present in a felony murder case. The present case is one. Defendant was trying to avoid decedent's death, not cause it. We should recognize that first degree felony homicide is first degree murder because the legislature has so decreed. It has defined the crime and fixed the punishment. Defendant's mental state as to taking a human life is immaterial. Numerous cases so hold. See *State v. Meadows*, 330 Mo. 1020, 51 S.W.2d 1033, 1037 (1932), for example. The fact that defendant participates in a named felony and that a death occurs in the course thereof is all that is required. As proof of this, one need look only at the MAI–CR instructions on the subject, MAI–CR 6.16–6.19. The jury is not required in any of them to find deliberation or premeditation, and if we were to require it in first degree felony murder instructions, the state would be the first to complain that we were requiring it to assume an unnecessary and unwarranted burden.

My dissent has to do with the ruling set forth in the opinion by Holman, J., that on the basis of certain statutes and a rule referred to in his opinion, defendant has no just cause to complain of his second degree murder conviction. It seems to me these statutes and the rule do not meet the objection defendant is raising. He is not complaining that the evidence shows him guilty of a higher degree of the offense than that of which he was convicted. He is complaining that he was convicted of second degree

murder without any evidence to support the conviction. That is the question before us, not whether there was evidence in the case which, if believed, would support a conviction for some other offense.

I do not believe that any of the statutes or the rule referred to means that a defendant cannot complain if he is convicted of an offense which the evidence does not show he committed. To hold otherwise would be perverse, lawless, and unconstitutional doctrine. The fact that the outcome could have been much worse for a defendant than it was is not a rational basis on which to affirm convictions not supported by the evidence. It amounts to making the crime fit the punishment. These statutes and the rule overlook the fact there is no such thing as a directed verdict of guilty. How can the evidence show a defendant "to be guilty" of a higher crime when it turns out that he is not convicted of it? We do not ordinarily go on the principle that because there is evidence tending to establish a proposition it follows that the proposition is established even though the jury (or whoever is the trier of the fact) decides otherwise. What does follow in such case is that the factfinder did not accept the contrary evidence. The state elected to prosecute this defendant for felony murder, but failed to convict, even though it made a submissible case. This furnishes no basis for finding defendant guilty of something else which the evidence does not support. Indeed, no claim is made by the state that the evidence supports a second degree murder conviction other than the untenable claim that second degree murder is a lesser included offense of first degree felony murder.

The opinion by Judge Holman makes reference to *State v. Bobbitt*, supra, and to *State v. Jewell*, 473 S.W.2d 734 (Mo.1971), which relies on the *Bobbitt* case. It is difficult to determine on what theory the court in *State v. Bobbitt* rested its decision. The information, which is set out verbatim in the opinion, charged defendant with conventional first degree murder—an assault with others by shooting the victim with a pistol. The proof was that defendant owned a farm and desired to evict the tenant. To that end he induced certain parties to set fire to the tenant house about midnight. Shortly thereafter the fire was discovered by the tenant, who came outdoors with his pistol, whereupon one of the group shot and killed him. Defendant was elsewhere at the time. The court instructed the jury on first degree felony murder, but ended the instruction, astonishingly, with the direction that the jury should then find defendant guilty of second degree murder and assess his punishment at imprisonment for not less than ten years. In addition to the language at 114 S.W. l. c. 517 quoted by Judge Holman, the court, in *Bobbitt* also said as follows at 114 S.W. l. c. 520: ". . . It cannot be said of this instruction that it did not embrace the essential elements of murder in the second degree, because murder in the second degree is included in murder in the first degree . . ." If the court meant what it said in the language just quoted, then the *Bobbitt* decision can equally be said to rest on the proposition that second degree murder is included in first degree felony murder and not on the statutes which are now Secs. 545.030 and 556.220.

Whatever the basis for the decision, if *State v. Bobbitt* stands for affirming a conviction which is without evidence to support it, it is a sixty-seven year old aberration which we should overrule here and now.

Judge Bardgett has pointed out in his opinion where he believes the evidence supports a conviction of second degree felony murder. As I read the record, under the evidence the trial court unquestionably could reasonably have found that defendant associated himself with the venture. One witness testified defendant made the suggestion that they "take off" the man next door and that Willie Dove and Sammy Lewis could go in first and put something over his face, because the victim would know defendant and the fourth man, Nathaniel Johns. There was also evidence that about

10 or 15 minutes after Dove and Lewis went into the victim's apartment defendant and Johns did likewise. One witness said there was no noise coming from the victim's apartment at the time defendant and Johns left the car to go to the apartment. Another (Nathaniel Johns) testified there was noise and that the purpose in his and defendant's going to the victim's apartment was that "if the people next door heard all that noise, they was going to come out in the back." Either version is consistent with defendant's going to the apartment to participate in stealing or robbing. In about 10 or 15 minutes thereafter, defendant and Johns returned, empty-handed, but "then" (it is not shown how soon this was), Dove and Lewis also came back to the car, Dove carrying a radio. Under these facts, it could reasonably be inferred there was more involvement by defendant than mere consent that something be stolen from the victim or his apartment. There was also a certain amount of active participation by defendant in the stealing of the victim's radio, enough to make him guilty of aiding and abetting in the crime. For these reasons and the reasons stated in the opinion concurring in result of Bardgett, J., I concur in the affirmance of the judgment.