STATE of Missouri,
Plaintiff-Respondent,

v.

Buddy Lee BROWN,
Defendant-Appellant.

No. 40544.

Missouri Court of Appeals,
St. Louis District,
Division One.

May 6, 1980.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 20, 1980.

**312**

Robert C. Babione, Public Defender, Linda Murphy, Asst. Public Defender, St. Louis, for defendant-appellant.

John Ashcroft, Atty. Gen., Paul Robert Otto, Mary C. P. Pincus, Teresa Aloi Angle, Asst. Attys. Gen., Jefferson City, George A. Peach, Circuit Atty., St. Louis, for plaintiff-respondent.

WEIER, Judge.

Defendant was convicted of murder, first degree, § 559.007, RSMo Supp.1975, (now § 565.003 RSMo 1978) and sentenced to life imprisonment. On appeal defendant advances four grounds for reversal: (1) it was error to admit defendant's statements which identified the murder weapon because he had not been re-advised his *Miranda* rights [1] immediately prior to the giving of those statements; (2) it was error for the

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

court to give an instruction which excluded lack of premeditation as an element of the crime charged; (3) it was error for the court to overrule defendant's exceptions to his psychiatric report because his attorney was not allowed to confer with the psychiatrist prior to the examination nor was he given a confidential copy of the psychiatric report; and (4) it was error for the court to overrule defendant's exception to disclosure of his psychiatric report because failure to keep the report confidential violated appellant's constitutional rights.

We affirm the judgment of the trial court.

On April 14, 1976, Joseph Strattman drove his 1976 Oldsmobile Omega to St. Louis from his home in Festus, Missouri, to confer with his stockbroker. In order to save money he parked his car near the Mississippi River. Testimony of police officers who interrogated defendant and his accomplice, Kevin Grey, reveal that defendant Buddy Lee Brown and Grey were in downtown St. Louis that morning and decided to steal a car in order to take Brown's pregnant girlfriend to Canada. It was near the parked car where they accosted Joseph Strattman. In the course of robbing Strattman, the defendant and Kevin Grey attempted to force him into the river. Strattman rolled off the steps upon which he had been ordered to sit and attempted to crawl underneath them. At this point Brown fired four shots underneath the steps and Grey reloaded the gun and fired four more shots. Strattman's death was the result of gunshot wounds. The bullets were identified to have been fired from the pistol later identified by the defendant as the murder weapon. Defendant Brown and Grey were arrested in Strattman's automobile.

Defendant was advised of his rights when he was arrested on April 14. The following morning he was re-advised of his *Miranda* rights. Two days later, although defendant was not re-advised of his rights, he was questioned about a weapon and identified it as the one used to shoot Joseph Strattman.

Defendant contends that it was error to overrule his pre-trial motion to suppress the statement because the failure to re-advise appellant was a violation of the *Miranda* mandate. He explains this by saying there was no showing he made a knowing and intelligent waiver of his right to remain silent on April 17 when he identified the pistol. The State asserts defendant failed to preserve the point for appellate review. We choose to decide the issue on its merits.

Defendant Brown was twice informed of his constitutional rights and chose to waive them and talk to the police. After a two-day lapse of time he identified the weapon used to kill Strattman. Prior to this he was not re-advised of his rights. Query: Is it fair to say that Brown made a knowing and intelligent waiver of his right to remain silent? We believe that he did.

 *Miranda* held that a defendant may waive his rights, "provided the waiver is made voluntarily, knowingly and intelligently." *Miranda v. Arizona*, 384 U.S. at 444, 86 S.Ct. at 1612. A confession is not necessarily invalid because the *Miranda* warning is not repeated in full each time the interrogation procedure is resumed after an interruption. *Miller v. United States*, 396 F.2d 492, 496 (8th Cir. 1968), *cert. denied*, 393 U.S. 1031, 89 S.Ct. 643, 21 L.Ed.2d 574 (1969); *State v. Woodward*, 587 S.W.2d 287, 289[3] (Mo.App.1979). The mere lapse of time between the receipt of the *Miranda* warnings and the giving of the incriminating statement does not require exclusion of the evidence. *State v. Battles*, 585 S.W.2d 213, 214[2] (Mo.App.1979) (statement made same day). While no Missouri court has dealt with a two-day lapse, *Maguire v. United States*, 396 F.2d 327 (9th Cir. 1968), *cert. denied*, 393 U.S. 1099, 89 S.Ct. 897, 21 L.Ed.2d 792 (1969), held that a three-day lapse of time between complete *Miranda* warnings and questioning does not make the initial warning insufficient.[2]

 The question to be answered is: Did defendant at the time of responding to the officer's inquiry in fact knowingly, volun-

---

2. *See* Comment, *Waiver of Miranda Rights*, 36 U.Chi.L.Rev. 413, 426 (1968).

tarily and intelligently waive the rights delineated in *Miranda*? Defendant was seventeen years of age with a twelfth grade education. When Brown took the stand in his defense, his answers to questions were clear and indicated at least normal intelligence. When he was arrested on the evening of April 14, 1976, he was informed by the arresting officer of his constitutional rights to remain silent and consult an attorney. He was then booked and held until the next day. At that time two detectives re-advised him of his rights as set forth in *Miranda*. In each instance he replied that he understood the warnings and made no request to consult an attorney. No attempt was made to challenge the giving of the prior warnings but he now contends that when the same two detectives talked to him again on April 17 and he identified the weapon as being the one he used, new warnings should have been given prior to the identification. We cannot agree with defendant's contention that in his willingness to talk and to identify the murder weapon he did not act as one who knowingly and intelligently waived his right to remain silent.

Defendant next contends the trial court erred by refusing to submit Instruction "A" which included the lack of premeditation as an element of the offense. The relevant statute under which defendant was convicted reads as follows:

> "First Degree Murder defined—The unlawful killing of a human being when committed without a premeditated intent to cause the death of a particular individual but when committed in the perpetration of or in the attempt to perpetrate . . . robbery . . . is murder in the first degree." § 559.007, RSMo Supp. 1975 (now defined in essentially same language in § 565.003, RSMo 1978).

Defendant maintains by refusing Instruction "A" submitted by his counsel as a substitute for MAI–CR 6.19, the court failed to instruct the jury on the essential element of lack of premeditation. A careful perusal of the rule and the notes on use contradict appellant's claim.

■ Nowhere in MAI–CR 6.19 is there found any reference to lack of premedita-

tion as an essential element of the offense. The notes on use relevant to MAI–CR 6.19 in this particular are found after MAI–CR 6.15 and provide that

> "[t]he phrase 'when committed without a premeditated intent to cause the death of a particular individual' . . . was not intended to exclude intentional, nondeliberate homicides committed in the perpetration of or attempt to perpetrate the enumerated felonies. Therefore, the phrase does not create an essential element of the crime which must be pleaded, proved or submitted to the jury."

As Seiler, J., stated in concurring opinion in *State v. Williams*, 529 S.W.2d 883, 890 (Mo. banc 1975): "The fact that defendant participates in a named felony and that a death occurs in the course thereof is all that is required. As proof of this, one need look only at the MAI–CR instruction on the subject, MAI–CR 6.16–6.19. The jury is not required in any one of them to find deliberation or premeditation . . . ." *See also*, MAI–CR2d 15.04–15.12, notes on use under 15.04.

■ Whenever there is an MAI–CR instruction or verdict form applicable under the law to the facts, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other on the same subject. Rule 20.02(c). Because appellant's Instruction "A" did not conform to MAI–CR 6.19, the trial court properly refused to give it.

Appellant's next contention asserts the trial court erred in overruling his exceptions to the psychiatric report, which was filed pursuant to § 552.020, RSMo 1978, because the refusal of the court to allow appellant's counsel to confer with the examining physician prior to the examination denied appellant his right to equal protection under the United States and Missouri Constitutions.

■ Section 552.020.1 provides that "[n]o person who as a result of mental disease or defect lacks capacity to understand the proceedings against him or to assist in his own defense shall be tried, convicted or sentenced for the commission of an offense so

long as the incapacity endures." Subsection 2 of the statute provides that when the judge has reasonable cause to believe defendant lacks the capacity to understand the proceedings against him or to aid in his own defense he shall order the requisite examination. This statute then provides the procedure for appointment of a psychiatrist by the court. The psychiatrist's report of the examination must then be filed with the clerk of the court who is required to deliver copies of the report to the State and to defense counsel, § 552.020.4. Other than distribution to the court and counsel the report remains confidential. The purpose of the statute is to enable the judge to determine whether the defendant can understand the proceedings and assist in his defense. The procedure outlined in the statute has been declared constitutionally adequate to protect a defendant's right not to be tried while legally incompetent. *Drope v. Missouri*, 420 U.S. 162, 173, 95 S.Ct. 896, 904, 43 L.Ed.2d 103 (1975).

Appellant's claim, as we understand it, is that the statute as it applies to him in this case is unconstitutional because if he was a person of means, his attorney would have been able to consult with the psychiatrist prior to and during the examination and this difference of treatment violates the equal protection clauses of the Missouri and United States Constitutions.

■■■ This statute has been previously attacked on equal protection grounds using the "person of means" argument and has been held to be constitutional. In *State v. Terry*, 472 S.W.2d 426 (Mo. banc 1971), *vacated in part on other grounds*, 408 U.S. 940, 92 S.Ct. 2876, 33 L.Ed.2d 763 (1972), appellant contended that he was denied equal protection because he could not have an examination by a private board certified psychiatrist of his own choosing, whereas persons able to pay the expense of such examination may have the benefit of the testimony of a private physician. The court found no impermissible discrimination. No equal protection rights are violated when an indigent defendant is denied a second psychiatric examination at state expense. *State v. Sturdivan*, 497 S.W.2d 139, 144 (Mo. 1973). While appellant's contention differs

from those in the cases cited in that he did not request a second psychiatric examination, the fact that his attorney was denied the privilege to confer with the court-appointed psychiatrist prior to and during the examination does not rise to the level of an invidious discrimination and does not deny defendant equal protection of the laws. The United States Supreme Court rejected an opportunity to address such a question in *United States v. Smith*, 436 F.2d 787 (5th Cir. 1971), *cert. denied* 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1972). There the 5th Circuit found no violation of constitutional rights when a psychiatric examination of the accused was held without his counsel present because the psychiatric examination was not an adversary proceeding. The question to be addressed in determining whether there is a violation of a right under the equal protection clause is to first determine whether the right claimed is explicitly or implicitly guaranteed by the Constitution. *San Antonio School District v. Rodriguez*, 411 U.S. 1, 33, 93 S.Ct. 1278, 1296, 36 L.Ed.2d 16 (1973). Although an examination by a qualified physician to determine the ability of an indigent defendant to stand trial is such a right, the privilege of having an attorney present at the examination does not fall in that category. The purpose of the psychiatric examination under the statute is to determine whether the defendant has the requisite mental capacity to understand the proceedings brought against him or to aid in his own defense. It is not held to determine whether he did or did not do the criminal act charged nor in this instance the mental state he was in at the time of the alleged act. Furthermore, the equal protection clause does not require absolute equality or precisely equal advantages. *Id.* at 24, 93 S.Ct. at 1291.

■■■ Defendant's final contention charges error when the court overruled his exceptions to the psychiatric report filed November 22, 1977, because he was not provided a confidential copy of this report. Defendant contends that by sending a copy of the report to the State as well as to his own counsel as mandated by § 552.020.4, the court denied him his rights of effective assistance of counsel, due process of law

and equal protection as guaranteed by the Missouri and United States Constitutions. The court, however, was following the procedures outlined in the statute that has previously ·been declared to be constitutionally adequate to protect defendant's right not to be tried while legally incompetent. *Drope v. Missouri, supra*, 420 U.S. at 173, 95 S.Ct. at 904. We see no right explicitly or implicitly guaranteed under the Constitutions of the United States or Missouri. Defendant asserts that providing a copy of the report to the State violated the attorney-client privilege under § 491.060, RSMo 1978. The psychiatrist here, however, was not an agent of the attorney or his client, the defendant. He was appointed by the court to assist the court in determining whether the defendant was fit to stand trial, § 552.-020(1), RSMo 1978, and by said appointment was an independent expert under the law selected by the judge and owing no special duty to defendant's attorney. The report was properly lodged with the court clerk and distributed in accordance with the mandate of the statute.

The judgment is affirmed.

STEWART, P. J., and SNYDER, J., concur.