UNITED STATES of America, Appellee,

v.

**Willard NIEUWSMA, Appellant.**

**Nos. 85–5087, 85–5112 and 85–5127.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 12, 1985.

Decided Dec. 26, 1985.

Rehearing Denied Feb. 6, 1986.

Gary Davis, Gregory, S.D., for appellant.

Robert A. Mandel, Asst. U.S. Atty., Pierre, S.D., for appellee.

Before BOWMAN, Circuit Judge, HENLEY, Senior Circuit Judge and WOLLMAN, Circuit Judge.

HENLEY, Senior Circuit Judge.

Represented by retained counsel other than present appellate counsel, Willard Nieuwsma pleaded guilty to conspiracy to commit mail fraud, a violation of 18 U.S.C. § 371. He was sentenced to fifteen months imprisonment for his part in a check kiting scheme. Several weeks after the sentencing, Nieuwsma made a motion under 28 U.S.C. § 2255 to withdraw his guilty plea, claiming that his plea was not voluntary.[1] He claims that his guilty plea was not made knowingly and intelligently because he was not told that intent to defraud was an element of the offense, and he claims that there was no factual basis in the record to support a finding of intent. The district court[2] denied the § 2255 motion to withdraw the guilty plea. We affirm.

The following facts are drawn from the parties' briefs, the transcripts of the plea hearing and the sentencing hearing and the presentence report.[3] Nieuwsma and Darrell Rausch, his friend, were involved in a check kiting scheme. Rausch was having financial difficulties and Nieuwsma agreed to help Rausch by becoming involved in the check kiting scheme. Jerome Seurer was a bank officer at Rausch's bank, the Bank of Hoven (South Dakota). His actions allowed the scheme to continue longer than it should have. He would hold Rausch's returned checks when there were insufficient funds to cover them instead of posting them against Rausch's checking account and he allowed overdrafts. (Seurer's activities are described in *Brickner v. Federal Deposit Insurance Corporation*, 747 F.2d 1198, 1200 (8th Cir.1984).) Nieuwsma argues that Seurer was an instigator and active participant in the check kiting scheme.

Nieuwsma and Rausch operated the check kiting scheme by exchanging a large number of checks over many months. They took advantage of the several days it took their banks, the Campbell County Bank and the Bank of Hoven (both South Dakota banks), to clear the checks through the correspondent bank in Minnesota and the Federal Reserve. The scheme basically operated as follows. Nieuwsma would write a check to Rausch. Rausch would deposit the check in his bank and would use these funds for various purposes. Nieuwsma would then deposit a check from Rausch for approximately the same

---

1. Under Fed.R.Crim.P. 32(d), after a sentence is imposed, a guilty plea "may be set aside only on direct appeal or by motion under 28 U.S.C. § 2255." Nieuwsma also filed a direct appeal concerning the voluntariness of his plea, arguing there was a violation of Fed.R.Crim.P. 11, but the appeal was untimely. The district court refused to grant an extension of time for the appeal, holding that the failure of an attorney to notify his client that he could appeal from a guilty plea was not excusable neglect under Fed. R.App.P. 4(b). Nieuwsma appealed from this adverse ruling. Because we find that the district court made no error in accepting the guilty plea, regardless of which standard is applied (miscarriage of justice under § 2255 or clearly erroneous error under the direct appeal), we find that the substantive issue to be presented on the direct appeal is moot, and therefore we decline to decide whether the district court abused its discretion in refusing an extension of time.

2. The Honorable Donald J. Porter, Chief Judge, United States District Court, District of South Dakota.

3. The presentence report was made after the guilty plea was accepted, but it was considered by the district court in its sentencing, and the report was made part of the record under Rule 7 of the Rules Governing Section 2255 Cases, 28 U.S.C. foll. § 2255 (expansion of record), when the district court reviewed the motion to withdraw the guilty plea.

amount in his bank. This falsely inflated their checking accounts and created forced credit. At first the checks were exchanged on an infrequent basis, but then the scheme accelerated to the point that checks were written on almost a daily basis. The checks tended to be in the range of forty thousand dollars. The check kiting continued until the scheme collapsed.

During the six month period covered in the indictment (April to September, 1981), both Rausch and Nieuwsma wrote checks in excess of $7,000,000.00 to each other, some of which was for legitimate business reasons. However, the accounts were inflated to such an extent that, if on any of the six dates listed in Counts II through VII no more deposits or withdrawals were permitted in each account and the outstanding checks were cleared, there would have been a combined overdraft of one-half million to one million dollars.

The scheme collapsed when the Bank of Hoven finally decided to dishonor checks Rausch had written for a total amount in excess of $290,000.00 because there were insufficient funds in his account to pay the checks. (Prior to that time they had been holding up checks until funds arrived or handling the checks in other ways which violated banking practices.) The checks were dishonored and then charged against Nieuwsma's account in the Campbell County Bank. Seurer, apparently on Rausch's behalf, then issued two money orders to the Campbell County Bank to cover the checks. Thus, the Bank of Hoven, rather than the Campbell County Bank, sustained the loss.

Nieuwsma was charged with one count of conspiracy, a violation of 18 U.S.C. § 371, and six counts of mail fraud, a violation of 18 U.S.C. § 1341. He cooperated with the government and agreed to plead guilty to the conspiracy charge. In return, the government agreed to drop the other charges and recommend probation. The district court accepted the guilty plea on January 11, 1985, and on January 31, 1985

rejected the government's recommendation of probation and sentenced Nieuwsma to fifteen months imprisonment. Acting through present appellate counsel, on February 28, 1985, which was a few days before he was to begin serving his sentence, Nieuwsma filed his motion to withdraw his guilty plea.

Nieuwsma argues that his guilty plea was not voluntary because he did not know that the government had to prove that he had intent to defraud, and, if he had known this, he would not have pleaded guilty because he never intended to defraud anyone. Nieuwsma argues that he entered the scheme innocently. The essence of his argument seems to be that although he knew that he was making false representations to the bank (that there were sufficient funds to pay the checks) he did not believe he was deceiving them because he thought the banks knew the representations were false, *i.e.*, they were aware of the scheme. He alleges in his brief that Seurer "requested that the checks be traded" and his own bank, the Campbell County Bank, "did not rely on the 'kited checks' as they were charging [him] interest on these checks for the time that it took them to clear the Federal Reserve." [4] Thus, although he fully understood the operation of the check kiting scheme, he argues that he did not intend to defraud or deceive anyone.

 To determine whether a defendant understood the nature of the charge against him we examine the totality of the circumstances. We examine whether the indictment gave him notice of the charge, whether he discussed the charge with his attorney or the judge, and we look at any other facts which are in the record. Here, the record reflects that Nieuwsma and his attorney had discussed the charges with each other. The judge questioned both the attorney and Nieuwsma as to whether they had discussed the charges with each other and both answered affirmatively.

---

**4.** The record shows that the banks may have questioned the number of checks exchanged,

but it does not state that they were aware that a check kiting scheme was occurring.

The conspiracy charge to which Nieuwsma pleaded guilty was stated in the indictment. At the plea hearing all seven counts in the indictment were read. The conspiracy charge stated that Nieuwsma willfully conspired "to knowingly use and cause to be used, the United States mails, for the purpose of executing a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses and representations...." The indictment described the check kiting scheme and stated that the checks were "not supported by sufficient collected funds in the drawee victim banks, the Campbell County Bank and the Bank of Hoven...." The judge then discussed the conspiracy charge with Nieuwsma and informed him that "to do something willfully is to do it intentionally and knowingly and not by mistake or accident...." When asked if he had any questions concerning the conspiracy charge, Nieuwsma replied that he did not.

■ Nieuwsma argues that the language of the indictment did not give him notice that he must have had the intent to defraud. He argues that the wording of the indictment is such that he believed that he could defraud merely by doing the act, although he had no intent to defraud. He believes the judge should have discussed the element of intent with him in more detail. It is not always necessary to formally explain the "elements" of an offense. *United States v. Kriz*, 586 F.2d 1178, 1180 (8th Cir.1978), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2893, 61 L.Ed.2d 317 (1979). The critical issue is whether the defendant understood the nature of the charge.

■ It is commonly understood that fraud involves false representations that deceive or are intended to deceive. *See* Webster's Third New International Dictionary (1971). If the banks had been willing participants in the scheme, then there may have been no deceit or fraud involved. The indictment refers to the banks as victims, thus negating any inference that they were willing participants in the scheme. The language of the indictment, that Nieuwsma willfully conspired to defraud the "victim"

banks by means of false representations, provided the element of intent. This indictment is similar to the indictment discussed in *United States v. Gross*, 416 F.2d 1205, 1209 (8th Cir.1969) (Blackmun, J.), *cert. denied*, 397 U.S. 1013, 90 S.Ct. 1245, 25 L.Ed.2d 427 (1970), another check kiting case. In *Gross* the indictment stated that "the scheme was one 'to defraud and to obtain money by means of false and fraudulent ... representations ... [the Grosses] well knowing at the time that the ... representations ... would be and were false when made....'" *Id.* We held that this statement "surely provides the elements of falsity, knowledge, and intent." *Id.* We hold that the indictment was sufficient to notify Nieuwsma that intent was an element of the offense and that the record as a whole amply reflects appellant's understanding of the nature of the charge.

Nieuwsma's case is quite different from *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), upon which he relies. In *Henderson* the Court found the guilty plea was involuntary because the defendant never received notice that intent to cause death was an element of the offense. The defendant had an unusually low mental capacity, the charge to which he pleaded guilty was not stated in the indictment, the nature of the offense was never discussed with the defendant, he never received notice that intent to cause death was an element of the offense, and finally, the Court found that according to the facts stated in the record it was possible that the defendant did not have the intent to murder the victim. By contrast, Nieuwsma had enough intelligence to become a successful businessman. He was given notice of the charge in the indictment. As indicated, the charge contained a reference to intent, and the record reflects he discussed the charge with his attorney and with the judge.

■ Nieuwsma next argues that there was no factual basis to support the guilty plea as required by Fed.R.Crim.P. 11. He concedes that he never made any protestation of innocence, but argues that the

record shows he entered the scheme innocently and at the request of others.

We find it highly doubtful, as did the district court, that Nieuwsma could have believed that he was engaged in a legitimate business transaction. *See Stevens v. United States,* 227 F.2d 5, 7 (8th Cir.1955) (defendants' checking transactions may not have been violative of the mail fraud statute if "they were honest business transactions made unmeet by improper conduct of the banker."). He was fully aware that Rausch did not have sufficient funds to cover his checks. It was clear that if the scheme collapsed someone would suffer a large financial loss.[5] That is exactly what happened. The Bank of Hoven suffered a loss in excess of $290,000.00.

The presentence report further rebuts Nieuwsma's contention that he was an innocent player in the scheme who never intended to defraud anyone. Although the report states that Nieuwsma entered the scheme innocently, it also states that "as the frequency and numbers of checks continued to increase, Nieuwsma became aware of the wrongfulness of his actions," presentence report at 9–10, and "he became aware that this type of activity was not legitimate," presentence report at 11. The report further states that he continued with the scheme because Rausch was his friend and he felt the only chance he had of recovering money that Rausch owed him was to keep him financially afloat. At the sentencing when the judge asked Nieuwsma if he would like to say anything in his own behalf, Nieuwsma replied, "Everything I had to say is in the presentence investigation and they did a thorough job of it and I feel everything is covered in their statement." Nieuwsma's admission he knew the kite scheme was wrong but continued in hopes of recouping his money shows he had intent to defraud.

In sum, we find the guilty plea was knowingly and intelligently made and there is a sufficient factual basis in the record to support the plea. We affirm the denial of the § 2255 motion, and we dismiss the direct appeal since the underlying substantive issue is now moot.

5. Nieuwsma's hope that Rausch would eventually become financially stable and be able to pay all the checks he had written is not in itself a defense to conspiracy to commit mail fraud. *See United States v. Stull,* 743 F.2d 439, 446 (6th Cir.1984), *cert. denied,* — U.S. —, 105 S.Ct. 1779, 84 L.Ed.2d 838 (1985). The general test

for intent to defraud is whether the defendant had a reasonable expectation that the checks would be paid when they were presented for payment. *United States v. Gross,* 416 F.2d at 1212; *United States v. Foshee,* 578 F.2d 629, 633 (5th Cir.1978).