Earl WILKERSON, Appellant,

v.

Donald WYRICK, et al., Appellees.

No. 86–1101.

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 10, 1986.

Decided Nov. 24, 1986.

Rehearing and Rehearing En Banc
Denied Jan. 5, 1987.

---

**162**

Steven D. Korenblat, St. Louis, Mo., for appellant.

Stephen D. Hawke, Jefferson City, Mo., for appellees.

Before ROSS, Circuit Judge, FLOYD R. GIBSON, Senior Circuit Judge, and MAGILL, Circuit Judge.

FLOYD R. GIBSON, Senior Circuit Judge.

Earl Wilkerson appeals from an order of the district court[1] denying his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. We affirm.

Wilkerson is incarcerated at the Missouri State Penitentiary for convictions of murder, kidnapping, and robbery. The facts underlying his conviction warrant repeating here.

In the early morning hours of July 30, 1977, Vernice Weary and her two sons Michael (age 17) and Larry (age 15) were asleep in their apartment in St. Louis, Missouri. Larry was awakened by the sound of gunshots coming from his mother's bedroom. Suddenly, the lights went on in Larry and Michael's bedroom as two men entered. The boys recognized one of the men as their mother's ex-boyfriend, Earl Wilkerson, who ordered Larry to "get up." Wilkerson's accomplice put a gun to Michael's head and ordered him to lie on the floor. Michael was given his mother's purse and instructed to find the car keys and money. Michael handed over thirty dollars. Michael was then instructed to unlock a room in which a stereo system was kept. Wilkerson decided not to take the stereo, however, after hearing a noise upstairs and concluding that it would not "look right" taking the stereo out of the apartment at that time of the morning.

Wilkerson and O'Toole put the two boys into their mother's car and drove them to East St. Louis, Illinois. Wilkerson stopped the car and O'Toole asked, "Do you want to do one of these with me?" The two men then took the boys from the car. Wilkerson ordered Michael to climb into a nearby boxcar. Wilkerson also climbed in, aimed his gun at Michael, and fired. The shot hit Michael in the shoulder and he fell to the floor. Wilkerson fired two more shots, but missed Michael both times. Meanwhile, O'Toole had ordered Larry to run up a nearby hill and lie down. O'Toole fired a shot at Larry, hitting him in the leg. Wilkerson and O'Toole then left.

Both boys were able to make it to their grandfather's nearby home. They were taken to the hospital. Their mother's body was found in her bedroom. The markings on the bullets that killed her were similar to the markings on the bullets found in the boxcar in which Wilkerson shot Michael.

1. The Honorable Clyde S. Cahill, United States District Judge for the Eastern District of Missouri.

Wilkerson was indicted in August 1977 on one count of capital murder (Mo.Rev. Stat. §§ 559.005, 559.009(1) (1975)), two counts of kidnapping, and one count of first degree robbery. The 1975 capital murder statutes under which Wilkerson was charged had been repealed and replaced in May 1977. Consequently, a substitute information in lieu of indictment was filed charging Wilkerson with violating the new capital murder statutes, Mo.Rev. Stat. §§ 565.001, 565.008 (1978), and the same kidnapping and robbery statutes. Finally, in May 1978 the state amended the information, substituting the capital murder charge with a first degree (felony) murder charge under Mo.Rev.Stat. §§ 565.003, 565.008.

Wilkerson was convicted by a jury of *second* degree murder, two counts of kidnapping, and first degree robbery. Wilkerson was sentenced to seventy-five years imprisonment for the second degree murder, ten years for each kidnapping, and fifteen years for the robbery.[2]

The Missouri Court of Appeals, Eastern District, reversed Wilkerson's second degree murder conviction, holding that the trial court erred in instructing the jury "on common form second degree murder because that crime was not charged in the amended information." The Missouri Supreme Court reinstated the second degree murder conviction and affirmed the kidnapping and robbery convictions. *State v.*

*Wilkerson,* 616 S.W.2d 829 (Mo.1981) (Bardgett, C.J. and Seiler, J., dissenting). The Missouri Supreme Court held that Wilkerson was sufficiently apprised of the charges against him. The supreme court relied on Missouri's "inferior degree offense" statute, which provides that "[u]pon indictment for any offense consisting of different degrees * * * the jury may find the accused not guilty of the offense charged in the indictment, and may find him guilty of any degree of such offense inferior to that charged * * * " Mo.Rev. Stat. § 556.220 (1969). The court reasoned that, in light of § 556.220, the state legislature's denomination of second murder as inferior in degree to first degree (felony) murder was sufficient to satisfy the state and federal constitutional requirement that Wilkerson be apprised of the charges against him. *Id.* at 833.

Wilkerson filed this habeas action contending that his second degree murder conviction is unconstitutional. Wilkerson argued that because he was convicted of an offense for which he was not charged he was not given notice of the nature and cause of the accusations against him. The district court relying on Mo.Rev.Stat. § 556.220 held that Wilkerson's conviction for second degree murder was authorized by Missouri statutory law. The court also held that Wilkerson had sufficient notice that under Missouri law second degree

**2.** The indictment charging Wilkerson with capital murder stated that Wilkerson "feloniously, willfully, knowingly, premeditatedly, deliberately, on purpose and of his malice aforethought did make an assault upon one VERNICE WEARY with a loaded handgun * * * thereby feloniously inflicting a mortal wound * * * contrary to Section[s] 559.005, 559.009(1)." The substitute information charging Wilkerson under the 1977 capital murder statutes employed identical language to that used in the indictment. The amended information charging Wilkerson with first degree (felony) murder stated that he "unlawfully, feloniously, and willfully kill[ed] VERNICE WEARY while * * * engaged in the perpetration of a robbery and thereby did shoot said ·VERNICE WEARY, inflicting a mortal wound * * * from which [she] died * * * contrary to Sections 565.00[3], 565.-008."

Under Missouri law in 1978, first degree murder required proof of the unlawful killing of a human being committed during the perpetration or attempted perpetration of any one of several enumerated felonies, including robbery. Mo.Rev.Stat. § 565.003 (1978) (explicitly excluding premeditation as an element). Intent to kill was not required; if the perpetrator possessed the requisite intent to commit or participate in the felony, the prosecutor was not required to prove any other mental state of the perpetrator. *State v. O'Neal,* 618 S.W.2d 31, 38 (Mo.1981) (construing § 565.003). Second degree murder, however, required proof of the "willful premeditated killing of a human being with malice aforethought." *State v. Franco,* 544 S.W.2d 533, 535 (Mo.1976), *cert. denied,* 431 U.S. 957, 97 S.Ct. 2682, 53 L.Ed.2d 275 (1977).

murder was a submissible offense in a felony murder case, relying on *e.g., State v. Williams,* 529 S.W.2d 883, 886–87 (Mo. 1975) and Missouri Approved Instructions 15.14 and 15.16 (explicitly applicable to homicides committed after May 5, 1977). Wilkerson filed this appeal.

The issue for decision is whether Wilkerson, who was charged by an amended information with first degree murder, had sufficient notice that a second degree murder instruction also would be submitted to the jury and that he could be convicted of second degree murder if the jury found him innocent on the first degree murder charge. We hold that Wilkerson had sufficient notice.

Criminal defendants charged by the state of Missouri are guaranteed their fundamental right to be informed of the "nature and cause of the accusation[s]" against them by both the Missouri Constitution, Mo. Const. art. I, § 18(a), and the United States Constitution, U.S. Const. amend. VI (applicable to the states through the fourteenth amendment, *see Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed.2d 644 (1948)). The sufficiency of an information is primarily a question of state law. *Goodloe v. Parratt,* 605 F.2d 1041, 1045 n. 12 (8th Cir.1979). Consequently, we are bound by the Missouri Supreme Court's conclusions that the information charging Wilkerson was sufficient under Missouri law and that Missouri's constitutional requirement that Wilkerson be apprised of the charge against him was satisfied. It is axiomatic, however, that due process is denied when a person is convicted without having received fair and reasonable notice of the charge against him. *Jackson v. Virginia,* 443 U.S. 307, 314, 99 S.Ct. 2781, 2786, 61 L.Ed.2d 560 (1979). Such denials of due process are cognizable in federal habeas corpus. *Goodloe v. Parratt, supra* at 1045 n. 12 (citing *Ridgeway v. Hutto,* 474 F.2d 22 (8th Cir.1973); *Blake v. Morford,* 563 F.2d 248 (6th Cir.1977), *cert. denied,* 434 U.S. 1038,

98 S.Ct. 775, 54 L.Ed.2d 787 (1978)). Thus, we consider Wilkerson's claim only in light of the due process required by the United States Constitution.

Wilkerson argues that we are confined to the four corners of the charging papers in deciding whether he had sufficient notice that an instruction on second degree murder would be submissible in this case. Because second degree murder was not charged, the argument continues, Wilkerson did not have notice that such a charge was submissible. We disagree that our examination is limited to the charging papers. *See generally United States v. Nieuwsma,* 779 F.2d 1359, 1361 (8th Cir. 1985) (with respect to the voluntariness of a guilty plea, the court examined the totality of the circumstances, including the indictment, discussions with counsel or the judge; and any other facts in the record, to determine whether the defendant understood the nature of the charge against him); *Conner v. Auger,* 595 F.2d 407, 410 (8th Cir.1979), *cert. denied,* 444 U.S. 851, 100 S.Ct. 104, 62 L.Ed.2d 67 (1979) (indictment together with minutes of grand jury attached, sufficiently informed defendant of the charge against him). The record in this case demonstrates that at the time Wilkerson was charged Missouri statutory law and case law as well as the Missouri Approved Instructions provided that a second degree murder instruction was submissible in felony murder cases. Consequently, we hold that Wilkerson had sufficient notice; Wilkerson knew he was charged with murdering Weary.

Mo.Rev.Stat. § 556.220 authorized a jury that found an accused not guilty of the offense charged to find him "guilty of any degree of such an offense inferior to that charged." Wilkerson was charged with first degree murder, which under Missouri law in 1978 was defined as felony murder—murder committed during the perpetration of a felony. Because second degree murder is an offense inferior in degree to felony murder, § 556.220 clearly authorized

the submission of the second degree charge to the jury. *State v. Wilkerson*, 616 S.W.2d at 832–33 (noting that the result would have been the same had the case arisen in 1981—the year the Missouri Supreme Court decided this case—because of the newly enacted § 556.046, which in essence recodified § 556.220).[3] Moreover, the case law at the time Wilkerson was charged recognized that a second degree murder charge was submissible in a felony murder case. *See State v. Williams*, 529 S.W.2d 883, 886–87 (Mo.1975); *State v. Jewell*, 473 S.W.2d 734, 738–39 (Mo.1971). These decisions stand for the proposition that "proof of the underlying felony stands in lieu of and is the equivalent of the necessary malice, premeditation, and deliberation and is tantamount to proof of first-degree murder." *Williams*, 529 S.W.2d at 886. Consequently, these elements were considered proved and second degree murder was submissible as a lesser degree offense of first degree murder under § 556.220. Finally, Missouri Approved Instructions provided that "if murder in the first degree is the highest homicide submitted, the court must give the instruction * * * on conventional second degree murder" when the evidence so justifies. MAI–Cr 2d 15.00, Notes on Use 3(e) (1978). *See* MAI–Cr 2d 15.14 and 15.16 (1978).[4]

These sources provided Wilkerson sufficient notice that second degree murder was submissible. Therefore, he was not denied due process. Consequently, we affirm the district court's denial of Wilkerson's petition for a writ of habeas corpus.

**3.** Although § 556.220 has been repealed, Mo. Rev.Stat. § 556.046 (1978) restates its substance: "A defendant may be convicted of an offense included in the offense charged in the indictment or information. An offense is so included when * * * [i]t is specifically denominated by statute as a lesser degree of the offense charged * * *"

**4.** MAI–Cr 2d 15.14 provided:
15.14. Murder: Second Degree, Conventional
    ((As to Count _____, if) (If) you do not find the defendant guilty of (capital murder) (mur-

der in the first degree) (capital murder or murder in the first degree), you must consider whether he is guilty of murder in the second degree.)
MAI–Cr 2d 15.16 provided:
15.16 Murder: Second Degree, Felony-Murder
    ((As to Count _____, if) (If) you do not find the defendant guilty of (capital murder) (murder in the first degree) (capital murder or murder in the first degree), you must consider whether he is guilty of murder in the second degree.)